No. 83-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

STATE OF MONTANA,

          Plaintiff and Respondent,

   -vs-

FRANCES MORRIS KAO,

          Defendant and Appellant.

APPEAL FROM:  District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Neil Halprin argued, Missoula, Montana

     For Respondent:

          Hon. Mike Greely, Attorney General, Helena, Montana
Jennifer Bordy argued, Legal Intern for Atty. General
Ted L. Mizner, County Attorney, Deer Lodge, Montana

                Submitted: January 25, 1985

                 Decided: March 28, 1985

Filed: _____ 1985

_Ethel M. Harrison_

—————————————————————————
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Frances Morris Kao appeals from a conviction of obstructing justice following a jury trial in the District Court of Powell County, State of Montana. Appellant was given a four year suspended sentence.

On August 11, 1982, Kermit Kao escaped from the Montana State Prison, at Deer Lodge, Montana. Authorities at the state prison notified Sheriff David Collings of Powell County, where the prison is located, and advised him of the escape and that appellant, Frances Morris, was Kao's girlfriend. Appellant lived in Deer Lodge. Sheriff Collings went to appellant's residence and informed her of Kao's escape. Sheriff Collings told her to call him if Kao came to her residence. Appellant allowed the sheriff to search the house. Later that night, Kao came to appellant's house where he was allowed to stay. Appellant did not call the sheriff or any other law enforcement personnel.

On August 14, 1982, the sheriff's office received an anonymous telephone tip from a person who stated that they overheard one of appellant's children state that "daddy" was home. The officers assumed that appellant's child was referring to Kao because they knew that appellant was divorced at the time and was romantically involved with Kao. Sheriff Collings and Officer Robert McNally, the prison investigator, proceeded to appellant's house with an arrest warrant for Kermit Kao. They had no warrant to search appellant's house. Sheriff Collings went to the back door of the house. Officer McNally went to the front door. Officer McNally knocked, and appellant answered. McNally explained that he was an officer and that he had come to arrest Kao.

Wearing only a nightgown, appellant first refused to allow McNally in. After she put on a robe, appellant allowed him to enter. Meanwhile, at the back door, Sheriff Collings heard scurrying from within the house. He knocked and saw a child run by the window. He began to kick the door and ordered the child to open it. The child opened the door and Sheriff Collings entered the house. Appellant asked the officers if they had a search warrant. They replied that they did not. Sheriff Collings told appellant that her home would be searched. Appellant was asked if Kao was in the house, and she replied that he was not. Appellant's home was searched. Officers discovered a man's wristwatch, spectacles, and a pint of vodka and some empty drinking glasses. Shortly thereafter, a trap door was discovered in the bedroom, and upon investigation Kao was found in the crawl space beneath the house. Appellant was arrested at that time, and taken into custody. At first Kao refused to exit the crawl space, however, tear gas was finally used and Kao surrendered.

Prior to trial, appellant moved to suppress the evidence of Kermit Kao's presence in the house on the grounds that it was illegally obtained because law enforcement officers failed to secure a search warrant before entering the house. The State claimed the officers went to the house with the purpose to effect the arrest warrant for Kermit Kao, and therefore was sufficient to justify the entry and search. The District Court agreed with the State's view and denied the suppression motion. The appellant was convicted, and renewed her challenge to the search in her appeal.

The following issues are raised on appeal:

1. Whether law enforcement officers may legally search for an escaped felon in the home of a third party without first obtaining a search warrant.

2. Whether appellant was denied the right to a fair and impartial jury trial because several jurors read newspaper accounts about the alleged crime six months prior to the trial.

This appeal raises serious questions concerning the right of privacy and the constitutionality of warrantless searches of third party homes for an escaped felon for whom the police have an arrest warrant. The disposition of the appeal involves a balancing of the duty of police officers to search for and arrest those who commit crimes and the right of innocent citizens to be secure in the privacy of their homes against unreasonable police invasion.

Appellant claims that she was prejudiced by the introduction of evidence obtained in the course of the warrantless search of her house. As a result, evidence regarding the presence of Kermit Kao was incriminating which led to her arrest and conviction, citing Weeks v. United States (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed 652, in which the United States Supreme Court held, that evidence obtained in the course of an illegal search is inadmissible in federal courts. In Mapp v. Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, reh. denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72, the United States Supreme Court extended this rule to the states.

In State v. Amor (1974), 164 Mont. 182, 520 P.2d 773, we stated that the warrantless search exception was predicated upon the existence of probable cause coupled with exigent

4

circumstances. State v. Speilmann and Christensen (1973), 163 Mont. 199, 516 P.2d 617.

The State asserts that the warrantless search of appellant's house was justified. The State submits that the "totality of the circumstances" established sufficient probable cause for the police to believe that Kao was in appellant's house:

(i) Three days after Kao's escape from the prison, the sheriff's office received an anonymous telephone tip that appellant's child had said "daddy was home;" appellant was divorced at the time and was romantically involved with Kermit Kao.

(ii) Appellant allowed the sheriff to search her home the day Kao escaped, but refused to permit a search three days later.

(iii) When officers went to her home to verify whether the tip was accurate, they heard scurrying inside and saw someone rush past a window.

(iv) After entering, officers noticed a man's watch and eyeglasses, a vodka bottle and empty drinking glasses. They also felt movement beneath the house.

We have recognized exceptions to the requirement of a search warrant, but we have been quite clear that these exceptions, based upon exigent circumstances do not dispense with the requirement of probable cause. The State asserts a review of all the circumstances establishes that law enforcement officers had probable cause to believe Kermit Kao was hiding in appellant's home. The State's argument is not convincing. The factor of the anonymous tip must be accorded minimal weight. State v. Leistiko (1978), 176 Mont. 434, 578 P.2d 1161. The anonymous telephone tip was nothing more than

a second-hand comment reported by a stranger allegedly spoken by a child on a street. The annonymous tip was not sufficient to establish probable cause. Absent the anonymous tip, we find the remaining circumstances were not sufficient to establish probable cause that Kermit Kao was in appellant's home.

Under an almost identical scenario of fact, the United States Supreme Court in Steagald v. U. S. (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38, held the police entry of defendant's residence to search for one Lyons for whom they had an arrest warrant was illegal. The Court reasoned that:

> "While an arrest warrant and a search warrant both serve to subject the probable cause determination of the police to judicial review, the interest protected by the two warrants differ. An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure. A search warrant, in contrast is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." 451 U.S. at 213.

The State seeks to avert our consideration of Steagald by arguing exigent circumstances justified the warrantless search.

The State argues that exigent circumstances, primarily the fact that it was late in the evening, approximately 9:00 p.m., when they learned of the tip, authorized the officers to search appellant's house without a search warrant. The State's argument on this point must be viewed with considerable skepticism. Several alternatives to a

6

warrantless search were available to the officers. When appellant refused to permit the officers to search her home, they should have left the residence and obtained a search warrant. We are convinced that if the officers obtained a search warrant, it would not have significantly impeded law enforcement efforts.

Furthermore, the parties conceded that four officers surrounded the house, thereby minimizing any escape of Kermit Kao during the period in which a search warrant could have been obtained. The State distinguishes Steagald on the basis that in Steagald the drug enforcement officers planned the search three days in advance. Whereas in the case at bar, the officers proceeded to appellant's home immediately after receiving the telephone tip. However, as in Steagald, appellant's home was also staked under suspicion days in advance of the search. Finally, if a judge is not available either because of the time of day or location, section 46-5-202, MCA, provides for the issuance of a search warrant upon the written or telephonic application of any person.

The State takes great heed of the fact that Kermit Kao was an escaped felon. The State maintains the police may assume that a felon desperate enough to escape from prison is capable of using any means, including violent conduct, to effectuate a successful flight. In fact, the exigency of the situation exceeds that attending the flight of a mere suspect for whom no determination of guilt has been made. We recognize the need for police officers to move quickly and firmly in the apprehension of escaped felons, especially those who are armed. The effective enforcement of the law, however, can only be maintained by a respect for the law. High on the list of constitutional rights is the right of

7

appellant to be free from unreasonable intrusion into the privacy of her home. A warrant for the arrest of Kermit Kao may indicate that the police officers had probable cause to believe he committed a crime; it afforded no basis to believe that Kermit Kao was in some stranger's home. If Kermit Kao threatened the life of the appellant or of any other citizen, or if the officers were in "hot pursuit" of Kermit Kao, a warrantless entry and search would have been justified. Warden v. Hayden (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782.

The Fourth Amendment to the United States Constitution, and Article II, section 11 of the Montana Constitution provide for the right of people to be secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized or without probable cause, supported by oath or affirmation reduced to writing.

The physical invasion of the home is the chief evil to which the Fourth Amendment is historically directed.

> "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton v. New York (1980) 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

See also Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; Jones v. United States (1958), 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514; Agnello v. United States (1925), 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.

8

In this case, not only was it the entry into the home of a third-party, but it was a nocturnal entry of appellant's residence. The time of entry works in more than one direction. On the one hand, the late hour may underscore the delay and perhaps impracticability of obtaining a search warrant, as the State would have us believe and hence serve to justify proceeding without one. On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness. Although crime has become an increasingly serious problem, especially in the community of Deer Lodge, the right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance.

Thus, whether the arrest warrant issued in this case adequately safeguarded the interest protected by the Fourth Amendment depends upon what the warrant authorized the agents to do. The warrant embodied a judicial finding that there was probable cause to believe that Kermit Kao had escaped from prison, and the warrant therefore authorized the officers to seize Kao. However, the officers sought to do more than use the warrant to arrest Kao, instead they relied on the warrant as legal authority to enter the home of a third person based on their belief that Kermit Kao might be a guest there. Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judge. Instead, appellant's only protection from an illegal entry and search was the officer's personal determination of probable cause.

During oral argument, the State argued that the search of appellant's house constituted a search incident to an

9

arrest. We disagree. If the police conduct a warrantless search of a person or his home and find evidence of a crime in the course of that search and then place the individual searched under arrest, it is clear beyond question that this search may not be justified as being incident to the subsequent arrest if the arrest is in turn based upon the fruits of the prior search. Such bootstrapping would render the Fourth Amendment a nullity. As the Supreme Court emphasized in Sibron v. New York (1968), 392 U.S. 41, 88 S.Ct. 1889, 20 L.Ed.2d 917, it is axiomatic that "a search incident to a lawful arrest may not precede the arrest and serve as part of its justification."

Finally, the State suggests any error in admitting the officer's testimony regarding the search of appellant's house and the apprehension of Kermit Kao, was harmless. The State contends that any defects in the search were remedied by the appellant's own testimony regarding the harboring of Kermit Kao.

This Court's holding in State v. Langan exposes the fallacy of the State's contention. We noted in that case, "The illegality of the entry into defendant's residence and the search thereof is not validated or legalized by the subsequent discovery of contraband marijuana therein." State v. Langan (1968), 151 Mont. 558, 445 P.2d 565. In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, the United States Supreme Court held nearly a half century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. Weeks v. United States (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed.

10

652; Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The State relies on general principles stated in a Texas Court of Appeals case, Finney v. State (Tex.App.3rd.Dist 1984), 672 S.W.2d 559. In Finney, the court found that although the search of a camper and automobile was not authorized and unlawful, any error of admitting evidence of the items discovered in the search of the camper was harmless given the defendant's voluntary confession. We find Finney lacks direct application to the present case. Here, the question involved the search of a third-party's home, not an automobile. Here, the defendant did not volunteer a confession, but merely testified as a witness at the suppression hearing.

We hold the illegal search of appellant's residence was not validated by the discovery of Kermit Kao. Any error in admitting the testimony of the officers regarding Kermit Kao's apprehension cannot be considered harmless error.

Whatever practical problems remain, they cannot outweigh the constitutional interests at stake. We must carefully balance the scale of justice; that is, the constitutional mandate imposed on the police by a warrant requirement versus the right protected--that of presumptively innocent people to be secure in their homes from unjustified forceable intrusions from the government. We, therefore, hold that police officers may not constitutionally enter the home of a third person in search of an escaped felon for whom they have a valid arrest warrant unless exigent circumstances exist and probable cause leads them to believe the suspect will be found on the premises.

Accordingly, the judgment of the District Court is reversed and the case is remanded to that court for further proceedings.

_John Conway Harrison_
Justice

We concur:

_J. H. Turnage_
Chief Justice

_Justices_

12