CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Christopher Williams and Bryan Smith appeal from an order denying their motions to suppress evidence seized from a motel room. After the District Court for the Thirteenth Judicial District, Yellowstone County, ruled the evidence admissible under the “plain view” doctrine, Williams and Smith entered guilty pleas to charges of criminal possession of dangerous drugs with intent to sell. We affirm.
The issues are whether the court should have suppressed the evidence because it was obtained as a result of an illegal search of the motel room, and whether Smith has standing to object to use of the evidence.
On the afternoon of October 11, 1992, Deputy Sheriff Dennis McCave of the Yellowstone County Sheriff’s Office received a phone *430 call from a known informant concerning a black Cadillac driving around in the North Park area of Billings, Montana, in a suspicious manner. According to the informant, the car was then parked at the Rimview Inn.
McCave checked records on the Cadillac and learned it was registered to Jason Hibit-Smith, a minor on whom there was an outstanding arrest warrant for sales of dangerous drugs to an informant. McCave obtained the arrest warrant and went to the Rimview Inn with Deputy Eugene Johnson. McCave was in plain clothes and Johnson was in uniform.
The Rimview Inn motel clerk told McCave that the two men who got out of the black Cadillac were in Room 122, which was registered to Chris Williams. When the deputies knocked on the door of that room, defendant Bryan Smith, in stocking feet, opened it.
McCave asked the two men in the room for their identification. Smith replied that he was Jason Hibit-Smith, and McCave advised him that he was under arrest pursuant to the arrest warrant. (Jason Hibit-Smith was actually Smith’s younger brother.) Deputy Johnson handcuffed Smith, then sat him down in a chair in the room so that they could put his shoes on. The officers observed a suitcase and a pile of clothes on the floor and a stack of money on a bed. Defendant Christopher Williams was sitting on another bed.
McCave asked Williams who he was and why he was there. Williams replied that he had just arrived from Seattle, that he knew Smith from Seattle, and that Smith had picked him up from the bus and taken him to the motel. McCave, concerned that the money on the bed might be Smith’s and that it might be the fruit of drug transactions, asked whose money it was. Smith and Williams both replied that the money belonged to Williams. McCave asked how much money there was, and Williams replied, “$2,000.” While McCave counted the money, Smith said there was not that much there. The stack contained a little over $1,000. McCave said he intended to seize the money until its ownership was cleared up.
Deputy Johnson, meanwhile, was writing down information from the defendants’ I.D.’s. Anticipating leaving with the deputies rather than in the Cadillac, Smith asked Williams to call his uncle, and began to give a phone number. Williams asked for a pen.
Johnson only had one pen, which he was using. McCave said he did not have a pen and commented that motels always have pens in the room. McCave looked at the open shelf on the telephone stand *431 and did not see a pen there. He then opened the desk drawer, immediately exposing
three baggies that contained approximately... 20 to 25 little folded pieces of paper with cocaine. There was also a small baggie by itself with an eighth ounce, an eight-ball of cocaine.
McCave closed the drawer and advised Williams he was under arrest.
Based upon the discovery of suspected cocaine in the drawer, the deputies obtained warrants to seize the evidence and to search the room and the Cadillac. Both Smith and Williams were charged with possession of dangerous drugs with intent to sell. Smith was also charged with obstructing a peace officer, for misidentifying himself as his brother.
At the consolidated hearing on the motions to suppress, the court heard testimony by both deputies and by defendant Williams. Smith did not appear at the hearing, although his counsel was present.
Williams’s testimony differed from that of the deputies on several matters. Williams testified that when the officers first came to the door, they stated they were delivery people. On cross-examination, however, he admitted that it “could have been” that they instead said “Sheriff’s Office.” Deputy McCave testified that, when he knocked on the door of Room 122, he stated, “Sheriff’s Office, please open the door.”
Williams testified that he addressed his request for a pen to Deputy Johnson and that Johnson had several pens in his shirt. Johnson testified that he only had one pen with him in the motel room.
The court heard Smith’s testimony several days later. At that time, Smith testified he had missed the suppression hearing because the thermostat went out in his car. As to the events of October 11, he testified that the officers said nothing when they knocked on the door of the motel room. He stated Deputy Johnson had “a lot of pens” in his pocket. He also testified that McCave went into the bathroom and picked up some keys by the sink and that McCave “started opening drawers” after Williams asked for a pen.
The District Court ruled that the “plain view” exception to the search warrant requirement applied to this situation, because the sheriff’s deputies were lawfully in the motel room and McCave inadvertently discovered the cocaine while looking for a pen for Williams. The court also ruled that Smith lacked standing to contest the legality of the search and seizure of the cocaine in the motel room, because he had no legitimate expectation of privacy in the room.
*432 Should the court have suppressed the evidence because it was obtained as a result of an illegal search of the motel room, and does Smith have standing to object to use of the evidence?
We first address Smith’s standing to raise Fourth Amendment objections to the opening of the drawer. In Minnesota v. Olson (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, the Court held that an overnight guest in an apartment had a legitimate expectation of privacy in the home. Smith argues that the Olson holding extends to him, as a guest in Williams’s motel room.
Status as an overnight guest was critical in Olson:
From the overnight guest’s perspective, he seeks shelter in another’s home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.
Olson, 495 U.S. at 99, 110 S.Ct. at 1689. In the present case, Smith does not claim that he intended to stay or had stayed in Williams’s room overnight. He denied even taking a nap, or intending to do so, in the room. He testified that he was just “waiting for Chris to get out of the shower.” We conclude that Olson is not controlling.
The idea that anyone legitimately on a premises may raise Fourth Amendment objections to a search of the premises has been rejected as “too broad a gauge for measurement of Fourth Amendment rights.” Rakas v. Illinois (1978), 439 U.S. 128, 142, 99 S.Ct. 421, 429, 58 L.Ed.2d 387, 400. The protections offered by the Fourth Amendment may more properly be said to extend to anyone who has a legitimate expectation of privacy in the place. Rakas, 439 U.S. at 143, 99 S.Ct. at 430. This requires more than a subjective expectation of not being discovered.
Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.
Rakas, 439 U.S. at 144, n.12, 99 S.Ct. at 431, n.12.
Smith does not articulate any reason, other than his mere presence in the motel room, why he had a legitimate expectation of privacy in the desk drawer in that room. In the absence of such a showing, we *433 hold that the District Court did not err in ruling that Smith is not entitled to raise Fourth Amendment objections to Deputy McCave opening the drawer.
On the other hand, Williams, as the registered guest in the room, undisputedly has standing to object to McCave looking in the desk drawer. See, e.g., State v. Ottwell (1989), 239 Mont. 150, 779 P.2d 500. We therefore proceed with our analysis of the “plain view” doctrine.
The Fourth Amendment prohibition against warrantless searches and seizures is not violated when the circumstances fall within the “plain view” doctrine. The elements of the “plain view” doctrine were first defined in Coolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583, as (1) the law enforcement officer had a prior justification for an intrusion; and (2) in the course of the intrusion the officer inadvertently came across a piece of evidence. Prior justification for the intrusion may consist of “a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused.” Coolidge, 403 U.S. at 466, 91 S.Ct. at 2038. Exigent circumstances are necessary to justify immediate seizure of evidence in plain view, but that requirement does not apply here because the deputies obtained a warrant before seizing the cocaine.
The applicability of the “plain view” doctrine to this case depends upon factual determinations of (1) whether the deputies were lawfully in the motel room (prior justification for the intrusion), and (2) whether McCave inadvertently came across the cocaine in the drawer. It is within the province of the district court to find the facts based upon the testimony at a suppression hearing, and this Court will not overturn such findings unless they are clearly erroneous. State v. Cope (1991), 250 Mont. 387, 396, 819 P.2d 1280, 1286, modified, State v. Bower (1992), 254 Mont. 1, 833 P.2d 1106. The credibility of the witnesses and the weight to be given their testimony are matters within the discretion of the district court.
Williams argues that the entry by the deputies into the motel room after Smith’s arrest was an intrusion into a protected area not within Smith’s immediate control. He cites State v. Kao (1985), 215 Mont. 277, 697 P.2d 903, as authority that exigent circumstances, probable cause, or consent was necessary before the deputies could lawfully enter the motel room.
The testimony conflicted on whether Smith’s arrest after he misidentified himself as his brother occurred inside or immediately out *434 side the motel room. But regardless of where the arrest occurred, it is undisputed that the deputies went into the room with Smith to get his shoes and his identification. There were no such circumstances in Kao.
It is not unreasonable under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person. Washington v. Chrisman (1982), 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778. In Washington, the facts were very similar to those here — the arrestee had to return to a dorm room to retrieve his identification. The Court held that the arresting officer rightfully followed him and observed marijuana in plain view in the dorm room. Similarly, we conclude that the deputies in the present case were lawfully in the room for purposes of allowing Smith to retrieve his shoes and his identification.
Williams offers no factual support for his claim that looking for a pen was a “pretext” for opening the desk drawer. McCave testified that he and Johnson were nearly ready to leave the room with Smith when Williams made the request for a pen. Williams admits that he asked for a pen to write down the telephone number Smith was giving him. McCave’s testimony that he did not have a pen was unrefuted. It was within the discretion of the District Court to determine which was more credible, Johnson’s testimony that he had only one pen which he was already using, or the testimony of Smith and Williams that Johnson had more than one pen. Further, McCave testified without contradiction that he opened the drawer only to accommodate Williams’s request for a pen.
Smith also made unsupported comments that Deputy McCave may have opened more than one drawer, hinting at a ransacking of the motel room. Other than Smith’s somewhat equivocal comments, there is no evidence of this. McCave stated that, in trying to locate a pen for Williams, he looked on the open shelf under the phone and then opened the desk drawer containing the cocaine. We conclude the District Court did not abuse its discretion in ruling that discovery of the cocaine was inadvertent.
The dissent cites as Montana authority for its position State v. Carlson (1982), 198 Mont. 113, 644 P.2d 498. The dissent fails to acknowledge that this Court has specifically limited its reasoning in Carlson to cases involving traffic-related misdemeanor offenses. See State v. Wood (1983), 205 Mont. 141, 143, 666 P.2d 753, 754.
The officers went to the Rimview Inn to serve a felony arrest warrant for sales of dangerous drugs on Jason Hibit-Smith. The *435 officers were not trying to serve an arrest warrant for a minor traffic offense as in Carlson. In Wood, the defendant was charged with issuing a bad check, a felony. This Court specifically and unequivocally stated that Carlson is limited to arrests for traffic-related misdemeanors:
The Corut, in Carlson, clearly limited its ruling to traffic-related misdemeanors. The interests of society in the administration of justice is [sic] greater here than in Carlson since a felony is involved. This is a sufficient compelling interest to justify a full custodial arrest.
... Carlson is limited to traffic-related misdemeanors. In Carlson this Court addressed the issue whether a full custodial arrest was proper for misdemeanor traffic offenses. ...
The rationale for our holding was based on the misdemeanor traffic offenses.
Wood, 666 P.2d at 754.
We hold that the District Court did not err in denying the motion to suppress. Affirmed.
JUSTICES HARRISON, GRAY, NELSON and WEBER concur.