No. 94-325

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

PENG Y. LOH,

    Defendant and Appellant.

**FILED**

APR 05 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Patrick D. Sherlock, Sherlock & Nardi, Kalispell,
Montana

    For Respondent:

        Joseph P. Mazurek, Attorney General, Patricia J.
Jordan, Assistant Attorney General; Thomas J. Esch,
Flathead County Attorney, Ed Corrigan, Deputy
Flathead County Attorney, Kalispell, Montana

Submitted on Briefs:  November 2, 1995

Decided:  April 5, 1996

Filed:

Justice James C. Nelson delivered the Opinion of the Court.

Peng Y. Loh (Loh) appeals from her conviction of criminal possession of dangerous drugs, a felony, and the Flathead County, Eleventh Judicial District Court's denial of her motions to suppress evidence seized from her home and to suppress her incriminating statements. We affirm.

## ISSUES

1. Did the District Court err in denying Loh's motions to suppress in violation of Rule 2, Uniform District Court Rules?

2. Did the District Court err in denying Loh's motion to suppress evidence found in plain view by fire fighters and police officers during an emergency entry of Loh's home?

3. Did the District Court err in denying Loh's motion to suppress her incriminating statements?

4. Did the District Court err in taking judicial notice of testimony given during the suppression hearing?

## BACKGROUND

On May 31, 1993, the Whitefish Police Department responded to a report of a house fire at 530 1/2 Spokane Avenue, Whitefish, Montana. Officers Denham, Cook, and Bergstrom arrived at the scene at about 7:30 p.m. One of the individuals gathered near the house told the officers that there were possibly two people inside the house. Officer Denham kicked in the back door, but could not enter because of thick black smoke. Officers Cook and Bergstrom kicked in the front door. The smoke was too heavy to see above three to four feet from the floor, so they crawled through the house on

their hands and knees. Officer Denham went around to the front door and followed Officers Bergstrom and Cook.

Officer Denham crawled into the bedroom, did not see anyone, but did see a "classical spaghetti jar with green leafy substance" that he suspected to be marijuana. He gave the jar to Officer Bergstrom to take out to the patrol car. Officer Denham continued into the bedroom where he saw a flat cardboard box with clear glass jars containing the same leafy substance. He gave the box of jars to Officer Bergstrom. As soon as Officer Denham exited out the front door, the firemen arrived.

After the firemen took care of the smoke and flames from the burning pan on the stove, Fire Chief Sipe told the officers that he thought there was still "some more stuff in the bedroom." Officer Denham and Fire Chief Sipe went back into the bedroom where they found two more boxes with a green leafy substance spilling out onto the floor. The boxes had been knocked over when the firemen had gone through the house. Officer Denham put the boxes on the futon. The officers then called the drug team.

While the officers waited for the drug team's arrival, Loh came home from work. Officer Cook informed her that there had been a fire in her house, but nothing had been destroyed. He then advised Loh of her Miranda rights and told her that he had found marijuana in her house. She replied "I know." Officer Cook arrested Loh and took her to the Whitefish Police Department. When Officers Voelker and Cook interviewed Loh, she admitted that she knew of the marijuana and admitted that it was hers. Loh grew up

in Malaysia and moved to the United States eleven years prior to her arrest. She had not yet perfected her citizen status.

After the drug team arrived, the officers thoroughly searched the house, including the basement, cars, drawers, and Loh's bicycle bag. Loh was charged with criminal possession of dangerous drugs, a felony. She was arraigned on the charge, appeared before the District Court, was advised of her rights, and entered a plea of not guilty. The District Court set the case for further proceedings. Loh moved to suppress evidence and to suppress her confession. At the suppression hearing, Loh admitted that she knew there was marijuana in the house. The State sought admittance of only the evidence seized before the drug team arrived and thus before the extensive search. The District Court denied Loh's motion.

At the beginning of the bench trial, the State requested that the District Court take judicial notice of Loh's testimony from the suppression hearing. Over Loh's objection, the District Court concluded that it would take judicial notice of facts it obtained from presiding over the earlier proceeding. The District Court found Loh guilty of criminal possession of dangerous drugs, a felony, deferred imposition of sentence, and placed her on probation.

## DISCUSSION

1. Did the District Court err in denying Loh's motions to suppress in violation of Rule 2, Uniform District Court Rules?

Loh argues that Rule 2 of the Uniform District Court Rules requires the adverse party to file an answer brief to a motion

4

within ten days or the motion will be well taken, and that the District Court erred by not ruling in Loh's favor when the State filed its answer brief well after the ten day period had expired. Loh also contends that by denying her motion, the District Court set a prejudicial trend against her. The State counters that failure to file a brief within ten days does not require a district court to grant the motion and that the record does not support Loh's allegation that the District Court was biased against her.

Our standard of review of discretionary trial court rulings in criminal cases is whether the trial court abused its discretion. State v. Sullivan (1994), 266 Mont. 313, 324, 880 P.2d 829, 836. Rule 2 of the Uniform District Court Rules provides:

> (a) Upon filing a motion or within five days thereafter, the moving party shall file a brief. The brief may be accompanied by appropriate supporting documents. Within ten days thereafter the adverse party shall file an answer brief which also may be accompanied by appropriate supporting documents. Within ten days thereafter, movant may file a reply brief or other appropriate responsive documents.
> (b) Failure to file briefs. Failure to file briefs may subject the motion to summary ruling. Failure to file a brief within five days by the moving party shall be deemed an admission that the motion is without merit. Failure to file an answer brief by the adverse party within ten days shall be deemed an admission that the motion is well taken. Reply briefs by movant are optional, and failure to file will not subject a motion to summary ruling.

We have interpreted this Rule as allowing the trial court discretion to either grant or deny an unanswered motion. Maberry v. Gueths (1989), 238 Mont. 304, 309, 777 P.2d 1285, 1289. In Maberry, the adverse party did not file a response to a motion within the ten days allowed under Rule 59(c), M.R.Civ.P. The

moving party argued that Rule 2(b) of the Uniform District Court Rules required that the motion be well taken. The district court denied the motion even though the nonmoving party did not file its answer brief within the allotted ten days. *Maberry*, 777 P.2d at 1288. In *Maberry*, we reasoned that under Rule 2(b), failure to file a brief "may" subject such a motion to summary ruling. Therefore, while the adverse party's failure to file a brief within the time allowed may be viewed as an admission that the motion is well-taken, the rule does not require a district court to grant the unanswered motion. Accordingly, we held in *Maberry* that Rule 2(b) does not remove the district court's discretion to grant or deny an unanswered motion as it sees fit. *Maberry*, 777 P.2d at 1289.

Similarly, in State v. Fertterer (1993), 260 Mont. 397, 399, 860 P.2d 151, 153, the defendants filed a motion to amend their sentences. The state did not file an answer brief. The defendants then filed a motion for summary ruling to which the state also failed to respond. On the date of the hearing on the motions, the state filed its objections. On appeal, the defendants claimed that Rule 2(b) of the Uniform District Court Rules required that the district court grant their motion for summary ruling because the state did not file its response briefs within the allotted ten days. We disagreed. Citing *Maberry*, we held that the district court did not abuse its discretion in denying the defendant's summary ruling on their motion to amend sentences. *Fertterer*, 860 P.2d at 153.

In the instant case, although the State failed to file its brief within the allotted ten days, it was within the sound discretion of the District Court to deny Loh's motion. Furthermore, the record does not support Loh's contentions that the District Court set a prejudicial trend against her by denying her motion. Accordingly, we conclude that the District Court did not abuse its discretion, and, thus, we affirm the trial court on this issue.

2. Did the District Court err in denying Loh's motion to suppress evidence found in plain view by fire fighters and police officers during an emergency entry of Loh's home?

Loh argues that the District Court erred in denying her motion to suppress and that the search of her home violated her Fourth Amendment rights. Loh concedes that the officers lawfully entered her home under exigent circumstances, but she contends that the evidence upon which she was convicted was discovered after it was determined that no persons were in danger. She maintains that when the officers discovered the evidence on which her conviction was based, they were unlawfully in her home, without a search warrant.

The State claims that the record does not support Loh's argument. The State contends that in the course of searching for persons in the house, the officers saw the evidence in plain view. Moreover, the State notes that none of the evidence seized after the drug team arrived and conducted a concededly unlawful warrantless search was relied upon to convict Loh. The only evidence used to convict Loh was that observed during the initial lawful entry and search for persons. The District Court adopted

7

this view of the evidence. We will not overturn a district court's findings of fact regarding suppression hearing evidence unless those findings are clearly erroneous. State v. Kaluza (1993), 262 Mont. 360, 361, 865 P.2d 263, 264.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Warrantless searches "are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585. One of these exceptions--the plain view doctrine--allows peace officers, under certain circumstances, to seize evidence in plain view without a warrant. State v. Sorenson (1979), 180 Mont. 269, 272, 590 P.2d 136, 139 (citing Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564).

As the United States Supreme Court recently described the doctrine in Horton v. California (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112,

> [t]he "plain view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest. If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an

8

> exception that is addressed to the concerns that are implicated by seizures rather than by searches. [Citations omitted.]

Horton, 469 U.S. at 133-34.

"A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." Horton, 496 U.S. 133. The seizure of property in plain view involves no invasion of privacy. Texas v. Brown (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. "[This] principle is grounded on the recognition that when a police officer has observed an object in 'plain view,' the owner's remaining interests in the object are merely those of possession and ownership." Texas, 460 U.S. at 739.

In Coolidge, the United States Supreme Court set forth the criteria that generally guides plain view seizures. The Court held that the police violated the Fourth Amendment when they seized two automobiles parked in plain view in the defendant's driveway and that, therefore, evidence of gunpowder obtained from vacuuming the inside of the cars was inadmissible. A search sought to be upheld under the plain view doctrine begins with the premise that the police officer had a prior justification for an intrusion, in the course of which he came inadvertently across a piece of evidence incriminating the accused. Coolidge, 403 U.S. at 465-66. The Court placed two limitations on the plain view doctrine, however: first, "plain view *alone* is never enough to justify the warrantless seizure of evidence," and second, "the discovery of evidence in plain view must be inadvertent." Coolidge, 403 U.S. at 468-69.

9

For example, "[w]here the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." Coolidge, 403 U.S. at 465.

The Court clarified plain view in Texas, noting that the doctrine merely reflects the application of the Fourth Amendment's requirement of reasonableness to the law governing seizures of property. Therefore, the question of whether the property in plain view may be seized turns on the legality of the intrusion that enables the officer to see and physically seize the property in question. Texas, 460 U.S. at 737.

In a subsequent case, Horton, the United States Supreme Court further clarified and refined the doctrine, noting that the second limitation the Court had placed on plain view in Coolidge-- inadvertency--was not supported by the majority of the Court and is not binding precedent. Horton, 496 U.S. at 137. The Horton Court stated that it was "satisfied that the absence of inadvertence was not essential to the Court's rejection of the State's 'plain-view' argument in Coolidge." Horton, 496 U.S. at 137. In Horton, the Court set forth the predicate for application of the plain view doctrine and delineated the two conditions for its employment, as follows:

> It is . . . an essential predicate to any valid
> warrantless seizure of incriminating evidence that the
> officer did not violate the Fourth Amendment in arriving
> at the place from which the evidence could be plainly
> viewed. There are, moreover, two additional conditions
> that must be satisfied to justify the warrantless

seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." . . . . Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. [Citations omitted.]

Horton, 496 U.S. at 136-37.

The Court chose not to continue the Coolidge inadvertency requirement because it was a standard that depended on the subjective state of mind of the officer rather than an objective standard of conduct. Horton, 496 U.S. at 138. Moreover, in refuting the need for inadvertency, the Court observed that the seizure of an object in plain view does not involve an intrusion on privacy. "If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view and there is no need for an inadvertence limitation on seizures to condemn it." Horton, 496 U.S. at 141.

Following this same rationale, the Ninth Circuit Court of Appeals recently adopted the Horton requirements in a case involving a warrantless, plain view seizure. See G & G Jewelry, Inc. v. City of Oakland (9th Cir. 1993), 989 F.2d 1093. In G & G Jewelry, the court noted that in Horton, the United States Supreme Court had disposed of the inadvertence requirement of the plain view exception. G & G Jewelry, 989 F.2d at 1099.

Moreover, the Circuit Court also analyzed the Supreme Court's reference at footnote 7 of the Horton decision to the Coolidge "exigent circumstances" requirement. Noting the Coolidge mandate that "the officer [must not only] be lawfully located in a place from which the object can be plainly seen, but . . . must also have

11

a lawful right of access to the object itself," the <u>Horton</u> Court observed that "[t]his is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" <u>Horton</u>, 496 U.S. at 137. The Ninth Circuit explained the reference, noting that in <u>Texas</u>, the Court had made it clear that there is no additional requirement of "exigent circumstances" for seizure of property that is in plain view, *provided* that the officer's presence on the property is lawful and the incriminating character of the evidence is immediately apparent.

> Footnote 7 in <u>Horton</u> is best understood as emphasizing that even though contraband plainly can be seen and identified from outside the premises, a warrantless entry into those premises to seize the contraband would not be justified absent exigent circumstances.

<u>G & G Jewelry</u>, 989 F.2d at 1101. Thus, while exigent circumstances may serve as the predicate for the officer's initial lawful entry upon the premises, they are not required for seizure of contraband in plain view if the officer is already legally on the premises.

Montana case law has varied in its application of the plain view doctrine; however, the majority of our cases rely on the <u>Coolidge</u> requirements. Montana first adopted the plain view doctrine in State v. Gallagher (1973), 162 Mont. 155, 509 P.2d 852. In <u>Gallagher</u>, an officer engaged in a search for a prowler, saw a blood-stained shirt, and what appeared to be blood-stained pants and socks belonging to the defendant. We held that the evidence should have been admitted as evidence seized under the plain view doctrine. <u>Gallagher</u>, 509 P.2d at 858. In so holding, we adopted

the conditions set forth in Coolidge: "[w]here there is prior justification for the police to search an area, and in searching the area, they inadvertently find incriminating evidence which they had no reason to anticipate, they may lawfully seize that incriminating evidence."

In State v. Lane (1977), 175 Mont. 225, 573 P.2d 198, we reiterated the predicate to and the conditions of the plain view doctrine as set forth in Coolidge. Noting that the doctrine is not without limits, we stated that an officer is not justified in making a warrantless seizure of evidence absent a showing of exigent circumstances rendering immediate seizure imperative. Lane, 573 P.2d at 201. In Lane, the officer sold his mobile home to the defendant and returned to the home looking for a pair of hip-waders that he had left behind. As he stood at the door to the home, the officer looked in the window and saw marijuana plants. The officer entered the home, arrested the defendant, and seized the marijuana plants. The officer did not have prior justification to enter the defendant's home; there were no exigent circumstances justifying a warrantless entry. We held that the plain view doctrine does not extend to pre-intrusion observation of evidence within a constitutionally protected area. Lane, 573 P.2d at 202.

In State v. Godsey (1982), 202 Mont. 100, 106, 656 P.2d 811, 814, we held that an officer investigating a traffic complaint did not violate the Fourth Amendment when he seized a bag of marijuana he saw in the front seat of the car. This Court reasoned that for

13

the evidence to fall within the plain view doctrine, it must be demonstrated that:

> (1) the police officer had a prior justification for the intrusion; (2) that he then inadvertently came across the evidence incriminating the accused; and (3) that exigent circumstances existed that rendered immediate seizure imperative.

Godsey, 656 P.2d at 813. Curiously, in the context of this three-part test, Godsey placed the exigent circumstances requirement, not as justification for the warrantless entry, but, rather, as the predicate for a warrantless seizure.

In State v. Osteen (1985), 216 Mont. 258, 700 P.2d 188, we returned to the two-part test for application of the plain view doctrine: the officers must have prior justification for the intrusion and the incriminating evidence must be discovered inadvertently in the course of the justified intrusion. Osteen, 700 P.2d at 191 (citing Sorenson, 590 P.2d at 139 (requiring prior justification and inadvertence)). In Osteen, we held that because the officers failed to obtain a warrant and the state failed to demonstrate any other valid basis for entry into the defendant's home, the district court did not err in suppressing evidence seized after the officer's entered the defendant's home without a warrant. Osteen, 700 P.2d at 192.

In State v. Hembd (1989), 235 Mont. 361, 767 P.2d 864, the state appealed the district court's order granting defendant's motion to suppress evidence seized from the trunk of his vehicle pursuant to a search warrant. Hembd, 767 P.2d at 865. The defendant contended that the search warrant did not permit the

14

officers to search any bag or container in the trunk other than the bag mentioned in the affidavit. In Hembd, we stated that under the plain view doctrine, four requirements must be met to seize items which are not described in a warrant; 1) there must be a prior justification for the intrusion into the protected area; 2) the articles must be in plain view; 3) the incriminating nature of the items must be apparent; and 4) the discovery of the articles must be inadvertent. Hembd, 767 P.2d at 869; see also State v. O'Neill (1984), 208 Mont. 386, 679 P.2d 760.

In State v. Williams (1994), 268 Mont. 428, 887 P.2d 1171, this Court acknowledged that the Fourth Amendment prohibition against warrantless searches and seizures is not violated when circumstances fall within the plain view doctrine. In Williams, this Court noted that the elements of the plain view doctrine were first enunciated in Coolidge and we proceeded to set forth the two-part Coolidge test of prior justification and inadvertence. However, as we did in Godsey, we stated that "[e]xigent circumstances are necessary to justify immediate seizure of evidence in plain view," but that the requirement did not apply in Williams because the deputies obtained a warrant before seizing the evidence. Williams, 887 P.2d at 1174.

Most recently, in State v. Stubbs (1995), 270 Mont. 364, 372, 892 P.2d 547, 552, we stated that a valid plain view seizure requires 1) that the officer have a prior justification for the intrusion; 2) that the officer inadvertently discover a piece of

15

evidence; and 3) that the incriminating character of the item seized must be apparent.

Given the development of plain view in the federal courts and our own somewhat inconsistent articulation of the elements of the doctrine, we conclude that it is appropriate that we adopt, for this and future cases, the Supreme Court's enunciation of the doctrine as set forth in Horton. We believe this to be the better approach to plain view inasmuch as the Court's analysis in Horton follows the underlying theory of the plain view doctrine that a seizure does not infringe on the defendant's privacy when the officer is already lawfully on the premises and observes evidence in plain view. Moreover, once the Fourth Amendment has been satisfied as regards the officer's initial entry and right of access (because the search is either based upon a warrant or because a warrantless search is circumscribed by the exigencies which justify its initiation), no additional interest is served by further requiring that the discovery of evidence be inadvertent. Horton 496 U.S. at 139-40. Furthermore, while exigent circumstances might justify the initial entry, once the officer is lawfully on the premises, there is no additional requirement that exigent circumstances exist before the property of an incriminating character in plain view may be seized. G & G Jewelry, 989 F.2d at 1100-01. Accordingly, to the extent that our prior case law holds that the doctrine of plain view includes a requirement that evidence be inadvertently discovered and/or that the immediate

16

seizure of evidence in plain view requires exigent circumstances, such cases are overruled.

The essential predicate to any valid warrantless seizure of incriminating evidence is that the officer must be lawfully at the place from which he could plainly view the evidence. In other words, his initial entry onto or intrusion into the place where he views the evidence must not have been in violation of the Fourth Amendment or in violation of Article II, section 11 of Montana's Constitution. In addition, there are two conditions that must be satisfied to justify the warrantless seizure under the plain view doctrine. First, the item must be in plain view and its incriminating character be "immediately apparent." Second, not only must the officer be lawfully located in a place from which the object can be plainly seen but he or she must also have a lawful right of access to the object itself. See Horton, 496 U.S. at 136-37.

Applying this articulation of the plain view doctrine to the case before us, we first inquire whether the officers were lawfully in Loh's home when they seized the incriminating evidence which was ultimately entered against her at trial. Under similar facts, the Washington Supreme Court has held that fire fighters lawfully in a defendant's home when they observed incriminating evidence, properly seized that evidence. State v. Bell (Wash. 1987), 737 P.2d 254. In Bell, fire fighters checked the attic directly over the burned area in a house to make sure there were no smoldering embers. Bell, 737 P.2d at 256. While in the attic, the fire

fighters noticed what they thought were marijuana plants. One of the fire fighters then summoned the fire marshall. The fire marshall left the house to attend to other duties but returned after 15 to 20 minutes and seized the plants. The Washington Supreme Court noted that a burning building creates an exigency that justifies a warrantless entry by fire officials. Bell, 737 P.2d at 257 (citing Michigan v. Clifford (1984), 464 U.S. 287, 293, 104 S.Ct. 641, 646-47, 78 L.Ed.2d 477, 483-84).

> A burning building clearly presents an exigency of sufficient proportions to render a warrantless entry "reasonable." Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze. And once in a building for this purpose, firefighters may seize evidence of arson that is in plain view.

Michigan v. Tyler (1978), 436 U.S. 499, 509, 98 S.Ct. 1942, 1950, 56 L.Ed.2d 486, 498. Moreover, officials do not need a warrant to remain in a building for a reasonable time to investigate the cause of the blaze after it has been extinguished. Clifford, 464 U.S. at 293.

We conclude that here, the officers were lawfully in Loh's home when they seized the incriminating evidence. In this case, the exigent circumstances of an apparent fire and the possibility that individuals were still in the house justified the officers' entry into Loh's home without a warrant. Accordingly, the "essential predicate" that the officers' intrusion into the place where they viewed the evidence not violate the Fourth Amendment or Article II, section 11 of Montana's Constitution was fulfilled.

Next, the record reflects that the jars of marijuana and the

open boxes of marijuana were in Officer Denham's plain view as he searched the bedroom for the occupants of the house. Moreover, the incriminating character of green leafy substance was "immediately apparent" as Officer Denham testified that he recognized the leaves as marijuana leaves. Finally, not only were the officers lawfully located in the bedroom of Loh's home where they observed the marijuana in plain view, but they also had a lawful right of access to what was obviously contraband, the possession of which was prohibited under Montana law.

Under our application of the <u>Horton</u> test as adopted in this case, we conclude that the seizure of the jars and boxes of marijuana met the initial predicate for the plain view doctrine as well as the two conditions for application of the doctrine. Accordingly, on the basis of the factual record established at the suppression hearing, we affirm the District Court's denial of Loh's motion to suppress.

3. Did the District Court err in denying Loh's motion to suppress her incriminating statements?

Loh argues that her Fifth Amendment privilege against self-incrimination and her Fourteenth Amendment right to due process of law were violated when the District Court admitted her allegedly involuntary and coerced statements. The State contends that following a hearing pursuant to § 46-13-301, MCA, the District Court correctly denied Loh's motion to suppress after finding that Loh was highly intelligent, understood her rights, and voluntarily made the statements admitting that the marijuana was hers.

19

We review a district court's findings of fact on a motion to suppress an admission or a confession to determine whether the findings are clearly erroneous. State v. Hermes (Mont. 1995), 904 P.2d 587, 588-89, 52 St.Rep. 1055, 1056 (citing Kaluza, 865 P.2d at 264). A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if this Court has a definite or firm conviction that the district court committed a mistake. Hermes, 904 P.2d at 589 (citing State v. Bower (1992), 254 Mont. 1, 7, 833 P.2d 1106, 1110).

Pursuant to § 46-13-301, MCA, a defendant may move to suppress a confession or admission on the ground that it was given involuntarily. The prosecution has the burden to prove by a preponderance of the evidence that the confession or admission was voluntary. Section 46-13-301, MCA.

The voluntariness of a confession or admission is a factual question which must take into account the totality of the circumstances. State v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208 (citing State v. Allies (1979), 186 Mont. 99, 606 P.2d 1043). The totality of the circumstances includes the following factors, among others: the defendant's age and level of education; the interrogation technique used by the police; whether the defendant was advised of his or her Miranda rights; the defendant's prior experience with the criminal justice system and police interrogation; the defendant's background and experience; and the defendant's demeanor, coherence, articulateness, and capacity to

20

In State v. Beach (1985), 217 Mont. 132, 151, 705 P.2d 94, 107, we held that the totality of the circumstances supported the district court's finding that the state proved the statements made by the defendant were voluntary. In Beach, we noted that the presence of timely and complete Miranda warnings supported voluntariness. Beach, 705 P.2d at 106. Moreover, there was no evidence that the defendant possessed less than average intelligence or that he was incapable of understanding the Miranda warnings. The officers that interrogated the defendant testified that he appeared calm and coherent; the questioning sessions were not long, arduous, or designed to take advantage of the defendant's situation or fatigue; and the officers made no threats of harm or promises. Beach, 705 P.2d at 106.

In the instant case, the totality of the circumstances supports the District Court's finding that the State met its burden of showing by a preponderance of the evidence that Loh's incriminating statements were voluntary. Loh was timely advised of her Miranda rights when she arrived at her home. Officer Voelker testified that Loh was again advised of her Miranda rights at the police station. The officers testified that Loh was relaxed, did not appear to have trouble understanding English, and appeared to understand her rights. The District Court found that Loh was "one of the most intelligent, insightful and articulate witnesses to testify in [his] court." Loh testified that the officers were friendly and did not outwardly use words to coerce her, (although she also stated that they did mislead her by saying that they had

22

a search warrant and would tear the house apart if she did not tell them what was going on). Officer Voelker denied threatening Loh with getting a search warrant or telling her he had a search warrant. In addition, the questioning sessions were not long, arduous, or designed to take advantage of Loh's situation or fatigue.

While we have repeatedly held that lying to a defendant or misleading the defendant is not acceptable, (see Grey, 907 P.2d at 955), the totality of the circumstances in this case, supports the finding that Loh voluntarily stated that she knew that she had marijuana in her house. Accordingly, we hold that the District Court's findings were not clearly erroneous and that its denial of Loh's motion to suppress her incriminating statements must be affirmed.

4. Did the District Court err in taking judicial notice of testimony given during the suppression hearing?

Loh contends that the District Court erred in taking judicial notice of testimony from the suppression hearing. The State argues however, that it presented its case-in-chief at the suppression hearing where the defendant was represented by counsel and where the witnesses were under oath and were subject to cross-examination. The same judge presided over the suppression hearing and the bench trial. Thus, the State claims that the District Court clearly had the discretion to take judicial notice of facts established at a hearing over which it presided, heard testimony, and heard objections.

23

The record in this case reflects that the Chief of the Whitefish Fire Department, Dave Sipe, Officers Cook, Denham, Meehan, and Voelker, all testified at the suppression hearing and the following evidence was offered and received in that proceeding: the "classical" pasta jar, a box of jars, two empty boxes, the marijuana found in the jars and boxes, the lab report, and two bags of marijuana. Before the beginning of the trial, the State requested the court to take judicial notice of the testimony presented at the suppression hearing. Specifically, the prosecutor stated:

> I don't see any reason to bring in the firemen to testify about the nature of their search of the house and were subject to cross-examination about finding these boxes in plain view. These items have been introduced into evidence and it seems to me to be redundant and a waste of the Court's time to have to go through those procedural steps again.

Loh objected, stating

> Yes, Your Honor, we would object to that at this time. The witnesses are here and my client does have a right to a trial. We did have a suppression hearing. Some evidence was brought out, some evidence wasn't brought out, and we will not stipulate to the fact that that evidence may be used and would object that it be used and would request that the Court only consider evidence presented from the witness stand under oath at this time; thank you.

The trial court, on the basis of Rule 201, ruled that

> in light of the Defendant's choice to waive a jury trial and have the case submitted to the Court sitting without a jury, I think the point is well taken. It would be not only redundant but entirely wasteful. I think the facts that you have asked me to take -- of which you have asked me to take judicial notice are of a type contemplated by Rule 201 and I'll grant your motion.

24

Thereafter, the State called Officers Denham, Voelker, and Meehan as witnesses. In summary, those witnesses testified that: during their search, they came across the jar of marijuana, a cardboard box full of jars of marijuana, and two boxes that had marijuana spilling out of them and that Loh said she was aware of the marijuana in her house and that she said she had grown it for their own use. Those witnesses were subject to cross examination. The defendant called Todd Dennison, a probation parole officer. At trial, the court received all of the evidence which had been previously received at the suppression hearing.

On the basis of the record before us, and irrespective of the trial court's taking judicial notice of the testimony in the suppression hearing, we conclude that the State presented sufficient evidence at trial on which the fact finder could conclude beyond a reasonable doubt that Loh was guilty of the offenses charged. What is apparent from the record is that if the court was without authority to take judicial notice of the evidence at the suppression hearing for purposes of proof at trial, the error was harmless at most.

We are unable to conclude that any substantial right of Loh was violated, and her trial objection, which was only very general in nature, does not specify what authority would preclude the trial court from taking judicial notice of the suppression evidence or what rule, statute, or constitutional provision might be violated by the court's decision in that regard. See State v. Weeks (1995), 270 Mont. 63, 85, 891 P.2d 477, 490-91, (specific objections must

25

be made to evidence deemed inappropriate; broad general objections are not sufficient). Moreover, at the conclusion of the trial, Loh did not raise any further objection as to the sufficiency of the evidence offered at trial.

Accordingly, we hold that there was sufficient evidence offered at trial to sustain Loh's conviction, and we decline to address the propriety of the trial court's taking judicial notice at trial of the evidence and testimony from the suppression hearing. This opinion should not be read as either approving or disapproving of that procedure.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

26