No. 89-19

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

LILLIAN H. MABERRY; WILLIAM K.
McBURNEY and ETHEL E. McBURNEY,
husband and wife; and JOHN W.
McBURNEY and SALLY D. McBURNEY,
husband and wife,

        Plaintiffs and Appellants,

   -vs-

GARY W. GUETHS and EVA E. GUETHS,
husband and wife,

        Defendants and Respondents.

APPEAL FROM:  District Court of the Tenth Judicial District,
               In and for the County of Fergus,
               The Honorable Peter Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        J. H. Morrow; Morrow, Sedivy & Bennett, P.C., Bozeman,
        Montana

    For Respondent:

        Torger Oaas, Lewistown, Montana
        Sherman V. Lohn, (of counsel), Missoula, Montana

Submitted on Briefs:  June 8, 1989

Decided:  July 25, 1989

Filed:

_____
          Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellants sought a District Court order declaring void deeds by which respondents the Gueths claimed title to portions of certain abandoned railway lines. The District Court for the Tenth Judicial District, Fergus County, ruled that the Gueths held fee simple title to the property. We affirm.

The issues are:

1. Did the trial court err in finding that the railroad held fee title to the land, and not only a right-of-way easement?

2. Did the trial court err in not finding that the Gueths were collaterally estopped from claiming fee title to the land in question?

3. Did the trial court err in failing to grant appellants' motions to amend findings, for new trial, and to alter the judgment?

The appellants own land in Fergus County, Montana, across which a railroad line has existed since about the year 1912. In 1978, the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (railroad company) filed for bankruptcy and was authorized to abandon all railroad lines west of Miles City, Montana, including this line. The railroad tracks, ties, and other improvements were removed. The Gueths, through the bankruptcy court, obtained a deed to the abandoned property from the railroad company.

Appellants filed a complaint in District Court, alleging that the railroad company held the lands in question as an easement for railroad purposes and that the abandonment of the lands for railroad purposes resulted in a reversion to them, the adjoining landowners. The Gueths' position was that the railroad held a fee simple estate in the land and

2

that the use or non-use of the property for railroad purposes had no bearing on the railroad's interest in the land. Basing its decision on the language of the deeds by which the railroad claimed title, the court ruled in favor of the Gueths.

## I.

Did the trial court err in finding that the railroad held fee title to the land, and not only a right-of-way easement?

The appellants cite Chicago, M. & St. P. Ry. Co. v. Portland (1918), 54 Mont. 497, 172 P. 541, as authority. In that case, this Court held that a strip of land owned by the railroad company in Lewistown was a mere easement. Appellants argue that the railroad company should not be allowed to have claimed in that case that its interest was a mere easement and to claim in this case that its interest is a title in fee. However, the appellants have not shown that the instrument of conveyance in Chicago was any of the three deeds involved here. Also, Chicago involved a portion of a railroad line which crossed a public street, not privately-owned land. That aspect was one reason given for the result reached by the Court.

The appellants also cite a number of cases from other states which have held that once a railroad abandons a strip of land for railroad purposes, title to the strip reverts to the owners of the adjacent land. But there is a split of authority on this question, depending in many cases upon the particular language of the conveyance involved. As discussed at Annot., 6 A.L.R.3d. 973, 976-77 (1966):

> Most cases dealing with conveyances to railroad companies fall into two general categories: (1) Those that grant "land" and those that grant a "right."

3

In the former group are those which contain language by which the grantor grants and conveys a strip, piece, parcel, or belt of land. In the latter group are those in which the language purports to convey a right of way, or other right or privilege with respect to using the property. . . .

The courts have found little difficulty with those conveyances whereby a grantor, by appropriate words of conveyance, unqualifiedly conveyed a strip of land to a railroad in the usual form of conveyance, nor have they generally found difficulty with those where a properly described right of way or easement over a designated tract of land was granted in the instrument of conveyance. . . .

There appears to be considerable conflict in the cases as to the construction of deeds purporting to convey land, where there is also a reference to a right of way. Some of the conflict may arise by virtue of the twofold meaning of the term "right of way," as referring both to land and to a right of passage. In some cases, particularly where the reference to right of way is in the granting clause, or where there are other relevant factors, the courts have held that an easement only was intended. In other cases, the deed is held to convey a fee simple estate in the land, the courts generally basing their holdings on the ground that the granting clause governs other clauses in the deed, that the reference to right of way did not make the deed ambiguous (therefore barring extrinsic evidence from consideration), or that the reference to right of way was to land and did not relate to the quality of the estate conveyed.

Other cases purporting to grant land contain language relating to the purpose for which the land conveyed is to be used. Some cases hold that such

4

language is merely descriptive of the use to which the land is to be put and has no effect to limit or restrict the estate conveyed; in others, the position is taken that such language indicates an intention to convey an easement only and not a fee. Many cases appear to turn upon the nature of the reference to purpose, the location of the reference in the deed, and the presence of other factors and provisions bearing on the question of intent.

The appellants point out that the subject deeds refer, in their legal descriptions of the strip of property, to the strip as one hundred feet wide and "50 feet of such width on each side of the centerline of the railway." The legal descriptions also refer to the strip as "the above described Right of Way." However, there are several aspects of the deeds which lead us to conclude that they conveyed land, not easements. The granting and habendum clauses refer to land, not a right. The trial court quoted the granting clause of one of the deeds, which read:

. . . has granted bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey unto the said party of the second part, its successors and assigns forever, all that certain strip, belt, or piece of land lying and being in Fergus County, Montana, particularly described as follows, to-wit:

The trial court stated, and the record confirms, that the other two deeds contain granting clauses identical to the one quoted in all material respects. The court noted that none of the granting clauses contain language limiting the title conveyed to anything other than an estate in fee. The trial court concluded that the deeds were general form warranty

5

deeds of the type used in the unrestricted transfer of real property in Montana.

The court also quoted the habendum clause of one of the three deeds, which it stated is identical in all material respects to the habendum clauses of the other two deeds. The record supports that statement. The quoted clause was:

> Together with all and singular tenements, hereditaments and appurtenances, thereunto belonging or in anywise appertaining. TO HAVE AND TO HOLD, all and singular, the said premises, together with the appurtenances unto said second party, and to its successors and assigns FOREVER.

The court stated that under Montana law, use of language like that used in the habendum clause is evidence of an intent to convey a fee simple estate.

The language relating to use as a railroad right of way is merely descriptive as to use and not as a limitation on the grant. We conclude that the references upon which appellants rely do not overcome the clear intent of the granting clauses and the habendum clauses that the railroad receive title in fee. We hold that the District Court did not err in concluding that the railroad company held fee title to the land.

## II

Did the trial court err in not finding that the Gueths were collaterally estopped from claiming fee title to the land in question?

Appellants base this argument on the Chicago case. They assert that Chicago represents a final judgment on the issue in dispute here, and that the Gueths are in privity with the railway company involved in that case. But as discussed above under Issue I, the Chicago case has not been shown to

6

have involved the same deeds as those involved here and, unlike this case, it involved a portion of a railroad line crossing a public street. We hold that the trial court did not err in holding the Gueths were not collaterally estopped from claiming fee title to the property.

## III

Did the trial court err in failing to grant appellants' motions to amend findings, for new trial, and to alter the judgment?

Following the District Court's entry of judgment in this case, appellants filed and served their combined motions to amend findings, for new trial, and to alter the judgment. The Gueths did not file a response to the motions within the ten days allowed under Rule 59(c), M.R.Civ.P. Appellants moved the court that the motions be deemed admitted and well-taken as allowed under Rule 2(b) of the Uniform District Court Rules. In response to a notice of hearing on the motions, the Gueths filed a brief and it was agreed that the matter would be submitted to the court without oral argument. The court then denied the motions. Appellants argue that this denial was error under the rules.

Rule 2(b), Uniform District Court Rules, provides:

> Failure to File Briefs. Failure to file Briefs may subject the motion to summary ruling. Failure to file a Brief within five days by the moving party shall be deemed an admission that the motion is without merit. Failure to file an Answer Brief by the adverse party within ten days shall be deemed an admission that the motion is well taken. Reply Briefs by movant are optional and failure to file will not subject a motion to summary ruling.

While the Gueths' failure to file a brief in the time allowed them is, under Rule 2(b), to be viewed as an admission by them that the motions are well-taken, the rule does not require the District Court to grant the unanswered motions. The rule states that failure to file a brief "may" subject such a motion to summary ruling. We hold that the rule does not remove the discretion of the District Court to grant or deny unanswered motions as it sees fit.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices