**FILED**

November 21 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0807

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 304

IN RE THE MARRIAGE OF:

JILL M. LUNDSTROM,

Petitioner and Appellee,

and

DIETER SCHOLZ,

Respondent and Appellant.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Sanders, Cause No. DR-06-25
Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jean Adele Carter, Attorney at Law, Thompson Falls, Montana

For Appellee:

Carolyn J. Stevens, Attorney at Law, Lolo, Montana

Submitted on Briefs:  October 24, 2007

Decided:  November 21, 2007

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Dieter Scholz (Scholz) appeals from orders of the Twentieth Judicial District, Sanders County, denying his motion to reconsider a protective order and denying his motion to dismiss the protective order. We affirm in part and reverse and remand in part.

¶2    Scholz presents the following issues for review:

¶3    Whether the District Court properly exercised jurisdiction over the protective order.

¶4    Whether the District Court properly denied Scholz's unanswered motions to reconsider the protective order and to dismiss the protective order.

¶5    Whether the District Court properly relied on its determinations from the June 20, 2006, hearing to deny Scholz's motion to dismiss the protective order.

¶6    Whether the District Court correctly included in the protective order terms contradictory to the hearing record.

### PROCEDURAL AND FACTUAL BACKGROUND

¶7    Scholz operates an ice-making business on 84 acres at the edge of the Cabinet Mountain Wilderness area near Noxon, Montana. Improvements on the property include a residence, an ice house, hydro-electric plant, and out-buildings. Jill Lundstrom (Lundstrom) acquired an interest in the real property in 2004. Scholz and Lundstrom married soon after she acquired the interest.

¶8    This dispute began in Justice Court when Lundstrom petitioned for a temporary protective order against Scholz on February 20, 2006. Lundstrom alleged that Scholz had shoved her against the bathroom wall during an argument. Lundstrom claimed that she broke her fingernail during the argument. The State charged Scholz with partner or family member assault in connection with Lundstrom's allegations in a separate Justice Court

2

proceeding. Scholz did not appear at the protective order hearing on March 13, 2006. The Justice Court issued a permanent protective order in his absence "effective until further order of the court." The Justice Court amended the protective order on March 20, 2006, to allow Scholz to enter the ice plant upon advance telephone notice to Lundstrom.

¶9 Lundstrom filed a petition to dissolve the marriage in the District Court on March 8, 2006. Scholz separately petitioned the District Court, on May 30, 2006, under the dissolution's cause number, to dismiss or modify the Justice Court's protective order. Scholz argued that he could not conduct his ice business effectively under the existing protective order. Scholz contended that the overly restrictive protective order unfairly subjected him to Lundstrom's whim regarding whether she chose to take his telephone calls giving her advance notice of his intent to enter the property.

¶10 The District Court held a hearing on Scholz's petition on June 20, 2006. Neither party offered new evidence or testimony. The parties' counsel and the court simply discussed the scope of the protective order. The District Court indicated that it was unwilling to modify the existing protective order to the extent that it would concern Scholz's pending criminal charge in Justice Court. The District Court agreed, however, to modify several terms of the protective order to allow Scholz more liberal access to his business properties. The District Court requested both parties to submit proposed orders memorializing the terms agreed upon during the hearing. On August 10, 2006, the court signed the order that Lundstrom's counsel had prepared.

¶11 Scholz filed a motion to reconsider. Scholz alleged that the June 20, 2006, order improperly included terms contradictory to those agreed upon in the hearing. Scholz also

later filed in District Court a motion to dismiss the protective order. Scholz alleged in the motion that the court had denied him the right to a hearing on the protective order's validity pursuant to § 40-15-202(1), MCA. Lundstrom did not answer either motion. The District Court denied both motions. The court determined that those issues were "specifically considered at the hearing on June 20, 2006 and addressed in the Court's Order Regarding Respondent's Motion for Temporary Orders filed August 10, 2006." Scholz appeals.

## STANDARD OF REVIEW

¶12 Whether a court has subject matter jurisdiction presents a question of law. We review a district court's conclusions of law to determine whether they are correct. *Boe v. Court Adm'r for the Mon. Jud. Branch*, 2007 MT 7, ¶ 5, 335 Mont. 228, ¶ 5, 150 P.3d 927, ¶ 5. We review for abuse of discretion a district court's decision to continue, amend, or make permanent an order of protection. *Edelen v. Bonamarte*, 2007 MT 138, ¶ 6, 337 Mont. 407, ¶ 6, 162 P.3d 847, ¶ 6.

## DISCUSSION

¶13 *Whether the District Court properly exercised jurisdiction over the protective order*.

¶14 District courts and justice courts have concurrent jurisdiction to hear and issue protective orders. Section 40-15-301(1), MCA. Section 40-15-301(3), MCA, provides that either party to a protective order "may appeal or remove the matter to the district court" before or after a hearing on the protective order. A district court may not take jurisdiction of a justice court case on its own initiative, however, under the plain language of § 40-15-301 (1)-(3), MCA.

4

¶15 Scholz contends that the Justice Court retained jurisdiction over the protective order until September 6, 2006, when Lundstrom formally removed the matter to the District Court. Scholz argues that the District Court impermissibly exercised jurisdiction of its own initiative over the protective order when it considered Scholz's May 30, 2006, motion to dismiss or modify the order. Scholz relies on the fact that neither party formally had removed or appealed the protective order, as required by § 40-15-301(3), MCA, to bestow jurisdiction on the District Court, until September 8, 2006.

¶16 The District Court did not consider the protective order on its own initiative. The District Court acted upon Scholz's petition. Scholz effectively availed himself of the District Court's jurisdiction when he petitioned the court. His petition operated like an appeal to the District Court to review the Justice Court's order. Section 40-15-301(3), MCA, provides for this appeal and the statute confers jurisdiction on the District Court to hear the matter.

¶17 We long have held that "[p]arties voluntarily submitting a controversy to a court having jurisdiction of the subject-matter cannot question its authority." *Deich v. Deich*, 136 Mont. 566, 576, 323 P.2d 35, 41 (1958) (citing *Hall v. Hall*, 70 Mont. 460, 226 P. 469 (1924). Scholz attempts to distinguish this case from *Deich* on the basis that the District Court failed to take a firm position on its jurisdiction to rule on the protective order. Scholz cites the court's professed unwillingness to stray too far from the Justice Court's original modified protective order at the June 20, 2006, hearing as an example of the court's failure to accept fully its jurisdiction.

¶18 The record reveals, however, that the District Court did not waver in exercising its jurisdictional authority over the protective order at the June 20, 2006, hearing. Instead, it

5

only declined to address issues concerning the partner or family member assault charge against Scholz pending in the Justice Court. The District Court fully accepted jurisdictional authority over the order when it considered and ruled on Scholz's petition to modify or dismiss the protective order. The court also fully accepted jurisdictional authority when it considered Scholz's two subsequent attempts to avail himself of that court's jurisdiction: Scholz's August, 25, 2006, motion to reconsider, and his September 18, 2006, motion to dismiss. Scholz cannot now challenge the District Court's jurisdiction in this matter.

¶19 *Whether the District Court properly denied Scholz's unanswered motions to reconsider the protective order and to dismiss the protective order.*

¶20 The District Court denied Scholz's August 25, 2006, motion to reconsider, notwithstanding Lundstrom's failure to file an answer brief within ten days of Scholz's supporting brief as required by Montana Uniform District Court Rule 2. The District Court also denied Scholz's September 18, 2006, motion to dismiss without allowing Lundstrom's ten day response window to expire. The District Court denied both motions on the grounds that the court previously had decided the issues at the June 20, 2006, hearing regarding Scholz's motion to modify the protective order.

¶21 Scholz argues first that the District Court could not base its denial of both motions on the June 20, 2006, hearing in light of the District Court's lack of jurisdiction over the protective order at that hearing. We have held above that the District Court properly exercised jurisdiction over the protective order beginning with Scholz's May 30, 2006, petition to modify or dismiss the protective order. ¶ 18. Scholz's jurisdictional claim fails.

¶22 Scholz next argues that under Rule 2 of the Montana Uniform District Court Rules the

6

District Court should have granted his August 25, 2006, motion to reconsider the protective order and his September 18, 2006, motion to dismiss when Lundstrom failed to file answer briefs. Rule 2(a) mandates adverse parties to file briefs in support of their answers. Rule 2(b) provides that an adverse party's failure to file an answer brief within ten days of the moving party's brief "shall be deemed an admission that the motion is well taken."

¶23 Montana Uniform District Court Rule 2 does not require the district court, however, to grant an unanswered motion. *State v. Pizzola*, 283 Mont. 522, 524-25, 942 P.2d 709, 711 (1997); *State v. Loh*, 275 Mont. 460, 466, 914 P.2d 592, 596 (1996); *Maberry v. Gueths*, 238 Mont. 304, 308-09, 777 P.2d 1285, 1289 (1989). We stated in *Maberry*, that "the rule does not remove the discretion of the District Court to grant or deny unanswered motions as it sees fit." *Maberry*, 283 Mont. at 309, 777 P.2d at 1289.

¶24 In *Maberry*, the adverse party did not file answer briefs in response to a motion to amend findings, motion for new trial, and a motion to alter the judgment until after the ten-day period had elapsed. We held that the district court properly exercised its discretion to deny the motions despite Rule 2. *Maberry*, 238 Mont. at 308-09, 777 P.2d at 1288-89. The district court in *Loh* denied the defendant's motion to suppress even though the State did not answer until after the ten-day period. We again held that the district court properly exercised its discretion. *Loh*, 275 Mont. at 465-67, 914 P.2d at 595-96.

¶25 The District Court denied Scholz's motions even though Lundstrom filed no response, timely or otherwise. The District Court determined, however, that both parties already had argued the issues fully and the court had addressed them at the June 20, 2006, hearing. We determine that it was within the District Court's discretion to deny Scholz's motions based

7

on these circumstances notwithstanding Lundstrom's failure to file answer briefs. We now address whether the District Court properly exercised that discretion.

¶26 *Whether the District Court properly relied on its determinations from the June 20, 2006, hearing to deny Scholz's motion to dismiss the protective order.*

¶27 Scholz argues that the District Court improperly relied on its determinations from the June 20, 2006, hearing to deny his motion to dismiss the protective order. He contends that he raised issues at the hearing different from those that he raised in the motion. Scholz argued in the motion to dismiss that the District Court's failure to hold a hearing, as required by § 40-15-202(1), MCA, to determine whether the protective order should remain in place invalidated the protective order. Scholz did not advance this same argument at the June 20, 2006, hearing. Scholz contends, therefore, that the District Court erred when it did not review the motion to dismiss on its merits.

¶28 We agree that the District Court failed to address Scholz's sole argument in his motion to dismiss – an argument the court had not yet had an opportunity to address. If it had addressed Scholz's argument, however, the District Court likely would have noted that the Justice Court held a hearing on the temporary protective order on March 13, 2006. Scholz failed to appear at that hearing. Nothing in § 40-15-202(1), MCA, required the District Court to provide Scholz with a second opportunity to challenge the validity of the order of protection issued by the Justice Court. He could not have successfully dismissed the protective order on those grounds.

¶29 The District Court may have failed to address the substance of Scholz's motion to dismiss regarding the claimed lack of a hearing. The District Court nevertheless reached the

8

correct conclusion. We will uphold a district court that has reached the right result even if for a different reason. *Solid Waste Cont. v. Dep. of Pub. Ser. Reg.*, 2007 MT 154, ¶ 29, 338 Mont 1, ¶ 29, 161 P.3d 837, ¶ 29. The lack of a second hearing did not invalidate the protective order. The District Court did not abuse its discretion when it denied Scholz's motion to dismiss.

¶30 *Whether the District Court correctly included in the protective order terms contradictory to the hearing record.*

¶31 Scholz argues that the District Court improperly included in the August 10, 2006, protective order, terms either contradictory to those discussed at the June 20, 2006, hearing on the matter, or outside the scope of the hearing. In *In re C.S.F.*, 232 Mont. 204, 209, 755 P.2d 578, 582 (1988), we held that "the rule in Montana as well as in other jurisdictions seems to be well settled that a judgment must be based on a verdict or findings of the court and *must be within the issues presented to the court.*" (Internal citations and quotation marks omitted).

¶32 Counsel for C.S.F.'s mother and father discussed the terms of a parenting plan on the record during a hearing to consider parental visitation rights. The district court adopted the mother's proposed plan that included several paragraphs relating to the father's written notice requirements for scheduling conflicts. The pleadings and hearing transcript addressed only accumulated visitation, not scheduling conflicts. *In re C.S.F.*, 232 Mont. at 205-07, 755 P.2d at 579-80. We inspected the hearing transcript and determined that the court's order was "a substantial departure in its provisions from the order requested by the District Court at the conclusion of its hearing . . . ." *In re C.S.F.*, 232 Mont. at 208, 755 P.2d at 581. We

9

held invalid portions of the order that deviated from the issues presented at the hearing because "[a] district court does not have jurisdiction to grant relief outside of the issues presented . . . unless the parties stipulate that the other questions be considered . . . ." *In re C.S.F.*, 232 Mont. at 209, 755 P.2d at 582 (internal citations omitted).

¶33 The District Court adopted verbatim Lundstrom's draft of the order. The order includes significant deviations from the issues covered at the June 20, 2006, hearing, as Scholz alleges. The District Court agreed at the hearing that Scholz would have unlimited access to the ice house upon telephonic notice to Lundstrom. The order provided that Scholz's access to the ice house would be conditional. The order required Scholz to submit written notice by mail of his schedule to Lundstrom one week in advance of any visits. The court did not specify at the hearing how, if at all, Lundstrom could consent. The order required that Scholz receive Lundstrom's written consent before he could access the ice house at unscheduled times. The court also agreed at the hearing that Lundstrom could not obstruct the driveway to deny Scholz appropriate access to the ice house. The order unconditionally prohibited Scholz from entering, regardless of consent issues, if Lundstrom obstructed the driveway. Finally, the court did not discuss how Scholz could notify Lundstrom of his need to access the ice house in case of emergency – certainly because the parties agreed at the hearing to telephonic access in any event. The order provided only for emergency telephonic notice procedures and narrowly defined what circumstances would constitute an emergency.

¶34 The District Court lacked the authority to order terms either contradictory to matters discussed at the hearing or matters completely absent at the hearing. *In re C.S.F.*, 232 Mont.

10

at 209, 755 P.2d at 582. We recognize, however, that Scholz's proposed order included many of the same contradictory terms as Lundstrom's. Scholz's proposed order provided for weekly written notice, although it allowed for telephonic notice as to unforeseen changes. Scholz's proposed order also discussed emergency notice, although it defined emergency much more broadly. Scholz's order did not, however, require advance written consent, consistent with the court's determination at the hearing.

¶35 Our decision in *C.S.F.* provides that a district court may not "grant relief outside of the issues presented . . . *unless the parties stipulate that the other questions be considered . . .*." *In re C.S.F.*, 232 Mont. at 209, 755 P.2d at 582 (emphasis added). We determine that Scholz effectively stipulated that the District Court could order specific terms when he included those terms in his own proposed order. Such stipulation creates space in which the District Court can deviate from the issues that the parties originally presented. The space created should be no broader, however, than the specific term or issue to which the parties stipulated.

¶36 The parties stipulated to written notice of a weekly schedule for regular access to the ice house in their respective proposed orders. The District Court properly included this term in the protective order. The parties also stipulated to emergency access procedures. The District properly included this provision in the order. The District Court should not have required written notice as the *exclusive* means of access to the ice house, however, because the parties did not stipulate to it. The parties did not stipulate to the requirement of Lundstrom's written consent. The parties did not discuss Lundstrom's consent at the hearing. The District Court improperly included the requirement of Lundstrom's consent.

11

The parties did not stipulate to Lundstrom's right to restrict unconditionally Scholz's access by obstructing the driveway. Once again, the District Court improperly included this term in the order. The District Court should have deviated from its original determination at the hearing to no greater extent than the parties actually agreed by stipulating.

¶37 We affirm in part and remand to the District Court for further proceedings consistent with this Opinion.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JIM RICE
/S/ JOHN WARNER