# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-20059

ROBERT A. BRUNIG, Individual, doing business as
Brunig & Associates,

Plaintiff - Appellant

v.

JOHN S. CLARK, *et al.*

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM:

Appellant Robert Brunig, a Texas attorney, appeals the dismissal of federal securities fraud, RICO, and state law claims brought against his former client, Appellee John Clark, to recover legal fees Clark allegedly owed him. He also appeals the imposition of Rule 11 sanctions requiring him to pay Clark $33,388.77 as the cost of defending against his suit.

I

In March 2004, Clark retained Brunig's legal services to remove liens on and restore royalty payments from Clark's mineral leases in Anderson County, Texas, termed by the parties the Temple-Eastex leases. The fee arrangement

provided that Brunig was to receive on a contingent basis forty percent "of all monies and other payment or property (including the value of all property whose title is cleared and returned to Client) collected."

Brunig's efforts on behalf of Clark met with mixed success. In response to actions brought against Clark by various parties seeking interests in Clark's leases, Brunig filed suit against those plaintiffs in federal court on RICO and fraud claims. The complaint was dismissed for failure to state a claim by the district court, and we affirmed.[1] However, Brunig did successfully clear Clark's Temple-Eastex land, leases, and equipment from all lien claims. For this success, Brunig sought to collect a forty percent contingency fee.

Contentious negotiations between Brunig and Clark over the fee followed. Brunig wanted a quick sale of the Temple-Eastex leases from which he could collect forty percent. Clark was reluctant to seek a buyer. After a significant amount of correspondence, the parties met and agreed that Clark would continue to hold the leases for the foreseeable future, but Brunig would receive forty percent of lease production until its sale, at which time he would receive forty percent of the sale price.

A few weeks after their agreement, Clark exchanged the Temple-Eastex leases for oil and gas leases in Madisonville County, Texas. Brunig alleges that Clark's employee, Michael Wilson represented to him that through the exchange Brunig would receive a forty percent interest in the Madisonville leases, that all of the leases' expenses would be paid out of revenues, and that he would receive a greater return from the Madisonville leases than he would have from the Temple-Eastex leases. On Wilson's representations, but without seeing the exchange agreement, the underlying leases, or the operating agreements, Brunig consented and signed the assignment and the division order.

---

[1] *Clark v. Douglas*, 2008 WL 58774, No. 06-40364 (5th Cir. 2008).

Then, approximately one month later, Brunig received a bill for $13,761.31 purporting to cover his portion of Madisonville's February and March operating expenses. Brunig was outraged; he had not expected to have to put up cash for operating expenses. He also suspected that in exchanging the Temple-Eastex leases for the Madisonville leases, Clark improperly pushed two months of the Temple-Eastex expenses onto the Madisonville books. Brunig refused to pay the invoice, and as a result, Clark sent him a notice of default.

Brunig responded by suing Clark, Clark's trust, his company, and his daughter alleging federal securities fraud and RICO violations, in addition to various state law claims. The district court dismissed for failure to state a claim and imposed sanctions on Brunig, who now appeals. We review the district court's grant of Appellees' motion to dismiss for failure to state a claim de novo.[2]

## II

Brunig first launches procedural challenges, none of which have merit. First, Brunig contends that because Appellees filed an answer to his complaint before the district court had ruled on their motion to dismiss, the motion was mooted. Brunig points to FED R. CIV. P. 12(b) which requires that motions to dismiss be made "before pleading if a responsive pleading is allowed." The Rule belies Brunig's point. In accordance with the Rule, Appellees filed their motion to dismiss before their answer and they were not obligated to wait to answer until the court had ruled on the motion.

Next, Brunig argues that the district court violated the non-delegation doctrine by referring the motion to dismiss to a magistrate judge. This claim is meritless; "a judge may designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court,

---

[2] *Brown v. US*, 227 F.3d 295, 297–98 (5th Cir. 2000).

of any motion [to dismiss]."[3] Relatedly, Brunig contends that he did not consent to the magistrate. But "the consent of the parties is not required" for such a reference.[4]

Brunig also claims that the district court judge did not review the magistrate's report de novo, basing this assertion on the bare fact that the district court's order does not explicitly state that it conducted a de novo review. There is no evidence that the district court did not conduct a de novo review. Without any evidence to the contrary, and in a case where the relevant record includes only the complaint, we will not assume that the district court did not conduct the proper review.[5]

Finally, Brunig urges that the district court dismissed his case on grounds not raised in the motion to dismiss, thus depriving him of an opportunity to respond. This contention is not supported by the record. Appellees' motion to dismiss sought dismissal of the federal securities fraud and RICO claims because the complaint failed to state a claim. The district court agreed and granted the motion.

## III

Brunig also challenges the dismissal on substantive grounds. His complaint alleged two federal securities fraud claims, one under § 12(2) of the Securities Act of 1933 and another under § 10(b) of the Securities Exchange Act of 1934. The district court dismissed both claims for failure to plead fraud with particularity.[6]

---

[3] 28 U.S.C. § 636(b)(1)(B).

[4] *Newsome v. EEOC*, 301 F.3d 227, 230 (5th Cir. 2002).

[5] *See Kreimerman v. Casa Veerkamp*, 22 F.3d 634, 646 (5th Cir. 1994).

[6] The district court's order dismissed solely based on the failure to adequately plead securities fraud. We nevertheless note that Appellees' motion to dismiss seriously misstated the law in arguing that the exemption in 15 U.S.C. § 77c(a)(11) for wholly intrastate offerings

We address the claims separately. As to the § 12(2) claim, regardless of whether the complaint pleads fraud with particularity, the claim fails for a more fundamental reason—the Supreme Court in *Gustafson v. Alloyd Co.*[7] interpreted § 12(2) of the Securities Act to apply only to initial public offerings or sales made to the public through a widely-disseminated prospectus. Section 12(2) is unavailable in a privately-negotiated assignment such as the assignment present in this case. The dismissal of that claim is AFFIRMED.[8]

Section 10(b) of the Securities Exchange Act of 1934 applies more broadly, generally dealing with post-distribution securities trades. Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security."[9] Our case law has distilled the regulation's language into well-settled elements: to state a cause of action a plaintiff must allege "1) a misstatement or omission 2) of material fact 3) occurring in connection with the purchase or sale of a security, that 4) was made with scienter and 5) upon which the plaintiff justifiably relied, 6) and that proximately caused injury to the plaintiff."[10] The district court dismissed on the

---

applied in this case. The exemption does not apply to § 12(2) because § 12(2) explicitly imposes liability "whether or not exempted by the provisions of section 77c of this title." 15 U.S.C. 77*l*(2). The exemption also does not apply to § 10(b) claims under the Exchange Act of 1934. The exemption is found in the Securities Act of 1933.

[7] 513 U.S. 561 (1995).

[8] "We need not accept the district court's rationale and may affirm on any grounds supported by the record." *Brown v. US*, 227 F.3d 295, 298 (5th Cir. 2000) (quoting *McGruder v. Will*, 204 F.3d 220, 222 (5th Cir. 2000)).

[9] 17 C.F.R. § 240.10b-5.

[10] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003).

grounds that Brunig failed to plead Clark's misstatements with particularity as required by the Private Securities Litigation Reform Act.[11]

While we agree with the district court that Brunig's complaint tends to the unartful and prolix, it does explicitly allege misstatements and omissions attributable to Clark. Brunig alleges that shortly after February 13, 2007, Clark's employee Michael Wilson informed him that as a result of the Temple-Eastex for Madisonville lease exchange, Brunig would receive a forty percent working interest and a twenty percent net revenues interest in the Madisonville leases on which he "would not be required to make any payments as the owner of a working interest, but all expenses would be paid out of revenues." Brunig alleges that he relied on the statement—which proved misleading as Brunig received a substantial bill for operating expenses—agreeing to the assignment "in good faith based on Michael Wilson's representations."

Brunig also alleges an omission. After Brunig executed the assignment for his interests, he requested and received from the Madison County Clerk documentation indicating that Clark, in addition to the sixty percent working interest and thirty percent net revenue interest that he had informed Brunig he was taking, had also taken overriding royalty interests in the Madisonville leases. Because overriding royalty interests reduce the amount of production available to the working interests, that Clark was taking such an interest was material to Brunig's decision to invest in the lease.

In addition to pleading omissions and misstatement with particularity, a plaintiff must also "state with particularity facts giving rise to a strong inference

---

[11] 15 U.S.C. § 78u-4(b)(1) ( . . . "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.").

that the defendant acted with the required state of mind."[12] The requisite scienter includes "severe recklessness," which we find is at play here. Based on the nature of working interests—which are by definition the lease interest that bears the cost of operations—Appellees' were either aware of the possibility that Brunig would have to make cash payments or severely recklessness in not realizing this possibility. Clark and his agent Michael Wilson were in possession of the exchange agreements, the leases, and the leases' operating agreements, which despite Brunig's requests were only belatedly provided to him, and these documents put them in the position to know which parties would bear the costs of developing the leases. This situation, as alleged in Brunig's complaint, supports an inference that Appellees' knew, or recklessly disregarded, that there was at least a possibility Brunig would have to make payments for operating expenses.

That Clark was taking a secret overriding royalty interest in line for payment above Brunig's interest also supports a strong inference of scienter; the inference that Clark omitted to inform Brunig of his overriding royalty to induce Brunig to accept an interest that would have been less attractive had the disclosure been made. Thus, we find that Brunig adequately, though unartfully, pled a securities fraud claim under § 10(b) of the Securities Exchange Act of 1934.[13]

---

[12] 15 U.S.C. § 78u-4(b)(2).

[13] The parties do not contest, and therefore we do not address, whether Brunig's interest in the Madisonville leases constitutes a "security" under the Securities Exchange Act. *See Adena Exploration, Inc. v. Sylvan*, 860 F.2d 1242 (5th Cir. 1988).

IV

Regarding Brunig's RICO claims, dismissal under Rule 12(b)(6) is appropriate unless the complaint pleads "enough facts to state a claim to relief that is plausible on its face."[14]

In order to state a claim under RICO, a plaintiff must allege, among other elements, the existence of an enterprise. Brunig's complaint does not make plausible that either a legal enterprise or an association-in-fact existed. His complaint alleges that "Clark, the Trust, CPLI, Liedtke, BBC, and others, known and unknown, associated themselves in fact." This is a conclusory statement, a recitation of the elements masquerading as facts. It does not make it any more or less probable that the listed parties have an existence separate and apart from the pattern of racketeering, are an ongoing organization, and function as a continuing unit as shown by a hierarchical or consensual decision making structure.[15] We affirm the dismissal of Brunig's RICO claims.

V

On the recommendation in the magistrate's report, the district court imposed Rule 11 sanctions on Brunig, ordering him to pay $33,388.77 to Appellees as the reasonable attorneys' fees incurred defending against his suit. The parties agree that the court imposed the sanctions on its own initiative, because even though Appellees' filed a motion seeking sanctions, their motion failed to follow the safe harbor procedures of Rule 11.[16]

---

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[15] *See Crowe v. Henry*, 43 F.3d 198, 205 (5th Cir. 1995).

[16] A party's motion for sanctions must first be served on the opposing party and cannot be filed with the court until twenty-one days after service, thus giving the opposing party an opportunity to correct its actions. *See* FED. R. CIV. P. 11(c)(1)(A).

Brunig contests that the district court did not follow the required procedure for imposing sua sponte sanctions. Rule 11, at the time sanctions were imposed in this case, stated in relevant part:

> On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

We have held that a district court imposing sua sponte sanctions abuses its discretion by disregarding Rule 11's procedural requirements that it issue a show cause order and describe the specific offensive conduct.[17] Brunig's brief asserts that the district court never issued a show cause order. This assertion misstates the record—the magistrate report's final section described Brunig's conduct, recommended that the district court judge impose sanctions, and directed Brunig "[i]f [he] chooses to show cause why sanctions may not be warranted in this case."[18] This report was filed September 24, 2007, over two months before the district court ordered sanctions on December 7, 2007. Brunig had ample time to show cause why sanctions should not be entered. And, in fact, on October 10, 2007 Brunig did object to the magistrate judge's sanctions recommendation in a document styled "Robert A. Brunig's Objection to Report & Recommendation." Brunig's quibble that he was not given notice through a show cause order is incorrect.[19]

---

[17] *See Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

[18] We find no fault in the fact that the show cause order occurred in the magistrate report instead of in a separate, stand-alone order. Rule 11 requires that sanctions motions *by parties* "be made separately from other motions and requests." There is no corollary requirement for sua sponte show cause orders.

[19] Brunig cites *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996), as a case in which an appellate court reversed sua sponte sanctions because the plaintiff was not afforded an opportunity to show cause. In that case, however, there was no show cause order before sanctions were imposed; the district court relied on its grant of the plaintiff's Rule 59(e)

Brunig also objects to the nature of the sanction; that the district court abused its discretion by imposing a sanction of attorneys' fees. The text of Rule 11 makes plain that a sanction order "directing payment to the movant of some or all of the reasonable attorneys' fees" is only available "if imposed on motion and warranted for effective deterrence."[20] Here, while Appellees' filed a sanctions motion, it did not comply with the Rule 11 safe-harbor requirements.[21] Thus, as the parties concede, the sanction was on the court's own initiative. Attorneys' fees paid to another party are not a valid sua sponte sanction under the Rule.[22]

We REVERSE and REMAND the sanctions order for the district court's reconsideration in light of this opinion. We AFFIRM the dismissal of the § 12(2) securities fraud claim, but REVERSE the dismissal of the § 10(b) securities fraud claim and REMAND that claim, along with the supplemental state law

---

motion for reconsideration as a substitute procedure through which the plaintiff could object to the sanctions. *Id.* at 151. The Seventh Circuit rejected this "makeshift procedure" explaining that "although the district court provided a kind of notice and an opportunity to respond, this occurred after sanctions had been imposed and while they remained in effect." *Id.* Here, in contrast, Brunig received notice through the magistrate's report and had ample opportunity to respond before the district court imposed sanctions.

[20] FED. R. CIV. P. 11(c)(2); *see Thornton v. General Motors Corp.*, 136 F.3d 450, 455 (5th Cir. 1998).

[21] *See infra* note 16.

[22] "This court . . . has affirmed a district court's determination that the least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses." *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001) (citing *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994)). The affirmed sanction in that case, however, was pursuant to a motion by a party, not on the court's initiative as in this case. We additionally note that the PSLRA provides for a presumption in favor of attorneys' fees and costs "for substantial failure of any complaint to comply with any requirement of Rule 11(b)" in securities fraud cases. *See* 15 U.S.C. § 78u-4(c)(3). However, the statute also defers to the procedural rule, stating that courts shall impose sanctions "in accordance with Rule 11." Thus, despite the PSLRA's presumption in favor of attorneys' fees, that form of sanction is only available on motion.

claims, for further proceedings consistent with this opinion. We AFFIRM the dismissal of the RICO claims.