FILED

07/22/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0653

DA 24-0653

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 157N

IN RE THE MARRIAGE OF:

KARLI R. ROADARMEL,

        Petitioner and Appellee,

   and

JOHN M. ROADARMEL,

        Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DR 19-332A
Honorable Peter B. Ohman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Terry F. Schaplow, P.C., Bozeman, Montana

      For Appellee:

          Caitlin T. Pabst, Steven E. Goodson, Pabst Law Firm, Bozeman, Montana

Submitted on Briefs:  June 18, 2025

Decided:  July 22, 2025

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Terry Schaplow appeals the October 25, 2024 judgment of the Eighteenth Judicial District Court, Gallatin County.[1] Judgment was entered against Schaplow personally after the District Court imposed M. R. Civ. P. 11 sanctions and denied his request for M. R. Civ. P. 60(b) relief for his representation of John "Mike" Roadarmel (Mike) in a dissolution proceeding between Mike and Karli Thompson, f/k/a Karli Roadarmel (Karli).[2]

¶3 In the underlying dissolution proceeding, Mike, with Schaplow as his counsel, filed a motion to stay a final parenting plan issued by the Standing Master presiding over the case. The parenting plan set a custody schedule under which the parties' children would reside with Karli approximately 60% of the time and with Mike 40% of the time. Karli, represented by attorney Caitlin Pabst, opposed Mike's motion. Relevant to this appeal, Schaplow's April 24, 2023 reply brief alleged:

---

[1] Schaplow timely filed his opening brief in this appeal. Karli did not file an answer brief and instead moved to dismiss the appeal, which Schaplow opposed. Karli argues Schaplow's appeal is frivolous and asks this Court to award her attorney fees related to the appeal. We took the motion under advisement pursuant to Section I(3)(b) of the Court's Internal Operating Rules for consideration with the merits of the appeal. *See In re Marriage of Roadarmel*, No. DA 24-0653, Order (Mont. April 15, 2025). Because we hold the appeal was not entirely frivolous, we deny Karli's motion to dismiss and request for attorney fees.

[2] The District Court granted Karli's petition for name change on May 8, 2023.

[The Standing Master] has once again engaged in the trafficking of little children, all in the name of creating a sanctuary court, and unabashed biased advocacy, for her lawyer Caitlin Pabst. . . . This is yet another example of the child trafficking that occurs in the [Standing Master's] court, all in the name of bias, the appearance of impropriety, and advocacy for her lawyer [Caitlin Pabst].

¶4 On May 12, 2023, Karli moved to disqualify Schaplow from further representing Mike, contending that disqualification was an appropriate sanction due to what she alleged were multiple violations of the Montana Rules of Professional Conduct. In her motion, Karli argued the allegations Schaplow made about the Standing Master trafficking children and Pabst representing the Standing Master were false and sanctionable.[3]

¶5 On June 9, 2023, the District Court issued an order setting a hearing on Karli's motion to disqualify Schaplow. The order referenced the statements made in Mike's reply brief and required Mike and Schaplow to present specific evidence at the hearing in support of these allegations. The court noted that "child trafficking involves the illegal movement of children for forced labor or sexual exploitation," and defined the term under § 45-5-702, MCA—the statute setting forth criminal penalties for sex trafficking. The court advised Schaplow "that testimony regarding disagreements individuals may have with [the] Standing Master's decisions regarding custody of children does not constitute child trafficking and is irrelevant unless it meets" the definitions set forth in the order.

¶6 Mike testified at the June 21, 2023 hearing, asserting his belief that the Standing Master trafficked the parties' children because the parenting plan allocated more parenting

---

[3] On appeal, Schaplow asserts the statements "regarding the [Standing Master] trafficking children and that [Pabst] was the [Standing Master's] lawyer, do not appear anywhere in the petitioner's disqualification motion." These statements clearly appear in the disqualification motion.

time to Karli, whose home, he alleged, was located in an unsafe neighborhood. The District Court questioned Schaplow about the legal basis for using the term child trafficking. Schaplow responded that he was not asserting that the Standing Master's conduct satisfied the statutory criminal definition of child trafficking. Instead, he claimed "trafficking in children" had a different, commonly used definition in child custody cases and, as he defined it, meant that a judge treated "children as a disposable commodity." Schaplow was unable to cite any cases to the District Court in which a court had used that term in this manner.

¶7      Regarding the factual basis of the allegations against the Standing Master, Schaplow offered as exhibits several online blogs and articles concerning services provided by an organization known as Family Bridges, affidavits signed by Mike, and affidavits signed by third-parties who were involved in unrelated family law matters over which the Standing Master presided. Except for Mike, none of the authors testified at the hearing. The court sustained Karli's hearsay objections after reviewing the affidavits and other offered exhibits. The court granted Karli leave to file a reply brief within 10 days of the hearing. Karli's reply brief requested an award of attorney fees and costs related to the motion to disqualify.

¶8      On August 21, 2023, the District Court issued its Order Re Rule 11 Notice (Rule 11 Notice), citing M. R. Civ. P. 11(c)(3). The District Court's Rule 11 Notice stated that, based on its review of the record and after conducting the June 21, 2023 evidentiary hearing, Schaplow violated Rules 11(b)(1)–(3) when he accused the Standing Master of

4

trafficking children and accused Pabst of acting as the Standing Master's attorney. The court provided Schaplow with 21 days to respond.

¶9 Schaplow's response reiterated the same allegations based on evidence rejected at the hearing. Schaplow maintained that he never accused the Standing Master of criminal acts, but was instead concerned with investigating the "integrity" of local judges and preventing the Standing Master from turning Bozeman into a "sanctuary city" for domestic abusers. Schaplow asserted that he presented a good faith argument in support of his definition, and he had a reasonable basis to allege that the Standing Master trafficked children due to her decision to award more parenting time to Karli and the Standing Master's alleged ties to Family Bridges. Because Karli opposed Mike's earlier motions to disqualify the Standing Master, Schaplow contended that Pabst became the Standing Master's lawyer and represented her in an official capacity.

¶10 The District Court's October 24, 2023 order (Rule 11 Order) denied Karli's motion to disqualify Schaplow, but concluded Schaplow violated Rules 11(b)(1)–(3) when he made the allegations against the Standing Master and Pabst in the April 24, 2023 reply brief supporting Mike's motion to stay. The Rule 11 Order provided that, if Schaplow persisted in filing documents containing the allegations, then the court would "issue an Order to Show Cause to demonstrate why [Schaplow] should not be held in contempt or removed as counsel in this proceeding." Schaplow was ordered to pay Karli's attorney fees related to her motion to disqualify, "which appropriately brought the Rule 11 matters to the Court's attention." After providing Schaplow with an opportunity to file written

5

objections and holding a hearing on the attorney fee issue, the District Court ordered Schaplow to pay $6,630.23.

¶11 On November 22, 2023, Schaplow moved for relief from the order imposing Rule 11 sanctions pursuant to M. R. Civ. P. 60(b)(6). Schaplow's brief in support lodged the same allegations against the Standing Master and Pabst. Karli did not respond to the motion.[4] The District Court denied Schaplow's Rule 60(b)(6) motion. On October 25, 2024, the court entered judgment against Schaplow in the amount of $6,630.23, plus post-judgment interest pursuant to § 25-9-205, MCA.[5]

¶12 We review a district court's decision denying a Rule 60(b)(6) motion for abuse of discretion. *In re Marriage of Remitz*, 2018 MT 298, ¶ 8, 393 Mont. 423, 431 P.3d 338. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *In re Marriage of Orcutt*, 2011 MT 107, ¶ 6, 360 Mont. 353, 253 P.3d 884.

¶13 We review de novo a district court's conclusion that a pleading, motion, or other paper violates Rule 11. *In re Estate of Boland*, 2019 MT 236, ¶ 20, 397 Mont. 319, 450 P.3d 849 (citing *Byrum v. Andren*, 2007 MT 107, ¶ 19, 337 Mont. 167, 159 P.3d 1062). We review a district court's findings of fact underlying that conclusion for clear error. *Estate of Boland*, ¶ 20. If the district court determines that Rule 11 was

---

[4] On December 15, 2023, Karli moved for a show cause hearing pursuant to the Rule 11 Order to determine whether Schaplow should be held in contempt or disqualified for raising the same unfounded allegations in his Rule 60(b)(6) motion.

[5] The District Court did not impose Rule 11 sanctions on Mike.

violated, then we review the court's choice of sanction for abuse of discretion. *Estate of Boland*, ¶ 20.

**Rule 60(b)(6) Motion**

¶14     Schaplow argues the District Court committed reversible error by denying his Rule 60(b)(6) motion because Karli did not file a response, and by failing to do so, she conceded the merits of Schaplow's arguments pursuant to MUDCR 2.

¶15     After the filing of a motion, MUDCR 2(c) provides that the adverse party's failure to timely file an answer brief may subject the motion to summary ruling and "shall be deemed an admission that the motion is well taken." MUDCR 2(c). But MUDCR 2 does not compel a district court to grant an unanswered motion. *See In re Marriage of Lundstrom*, 2007 MT 304, ¶ 23, 340 Mont. 83, 172 P.3d 588; *State v. Loh*, 275 Mont. 460, 466, 914 P.2d 592, 596 (1996); *Maberry v. Gueths*, 238 Mont. 304, 309, 777 P.2d 1285, 1289 (1989). The district court retains discretion to grant or deny unanswered motions as it sees fit. *Marriage of Lundstrom*, ¶ 23.

¶16     The District Court denied Schaplow's November 22, 2023 motion for Rule 60(b)(6) relief notwithstanding Karli's failure to timely file an answer brief as contemplated by MUDCR 2. The District Court reasoned that relief under Rule 60(b)(6) was not justified because Schaplow's motion cited the same arguments and evidence the court had already considered in its Rule 11 Order.

¶17     To receive relief from a judgment under Rule 60(b)(6), a movant must meet "the higher burden of proving extraordinary circumstances" and show the movant was

7

"blameless and acted within a reasonable amount of time." *Estate of Kinnaman v. Mt. W. Bank, N.A.*, 2016 MT 25, ¶ 30, 382 Mont. 153, 365 P.3d 486 (citation omitted). Rule 60(b)(6) is not intended to be a substitute for appeal. *Estate of Kinnaman*, ¶ 30 (citation omitted). A motion under Rule 60(b)(6) must be more "than a request for rehearing or a request that the District Court change its mind. It must be shown that something prevented a full presentation of the cause or an accurate determination on the merits and that for reasons of fairness and equity redress is justified." *Estate of Kinnaman*, ¶ 30 (citation omitted).

¶18 Schaplow's Rule 60(b)(6) motion in this case was essentially a request that the District Court change its mind. The District Court correctly observed that Schaplow's motion was "simply a rehash of the previous claims . . . [that] reference[d] documentation from third parties to support the contentions [Schaplow] made, and which were the basis for the Court's previous Rule 11 Order." The fact that Schaplow was unsuccessful in his arguments before the District Court is not an extraordinary circumstance justifying Rule 60(b)(6) relief.

¶19 Citing *Eisenhart v. Puffer*, 2008 MT 58, 341 Mont. 508, 178 P.3d 139, Schaplow argues Karli made a "judicial admission" that the Rule 60(b)(6) motion was well taken. In that case, the district court granted a motion to dismiss the Puffers' counterclaims after the Puffers failed to respond to the motion. *Eisenhart*, ¶ 36. We affirmed, reasoning "[t]he Puffers have alleged no factual or legal authority that would indicate why" the motion to dismiss should not be considered well taken under MUDCR 2. Schaplow's reliance on

*Eisenhart* is misplaced. Unlike *Eisenhart*, there was ample factual and legal authority in this case indicating why Schaplow's motion should not be considered well taken. The parties had already fully briefed and argued the merits of the claims Schaplow repeated in his Rule 60(b)(6) motion. The District Court had also ruled in its Rule 11 Notice that Karli did not need to further brief her position as to those claims. Moreover, "a deemed admission" that a motion is well taken under MUDCR 2 "cannot convert a motion which is incorrect as a matter of law into a motion which is well taken as a matter of law." *State v. Pizzola*, 283 Mont. 522, 525, 942 P.2d 709, 711 (1997). The District Court did not abuse its discretion by denying Schaplow's Rule 60(b)(6) motion for relief.

**Rule 11 Sanctions**

¶20 Under Rule 11, when an attorney presents a written motion or other document to the court—whether by signing, filing, submitting, or later advocating it—the attorney certifies to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims or legal contentions are supported by existing law or make a good faith argument to change existing law; and (3) the factual contentions have evidentiary support, or will likely have support following further investigation. M. R. Civ. P. 11(a)–(b)(3).

¶21 On appeal, Schaplow argues he made a good faith argument that his definition of child trafficking was supported by existing law and was commonly used in divorce cases because the documents he submitted to the District Court—including the affidavits of his

9

client, Mike, the affidavits of third-parties, and the online articles—used the term in reference to services provided by Family Bridges and the Standing Master's conduct.

¶22 To satisfy Rule 11, "a party need not be correct in his view of the law, but the party must have a good faith argument for his or her view of what the law is or should be." *Jacildo v. McFadden*, 253 Mont. 114, 116, 831 P.2d 597, 597 (1992). The standard for determining whether a document has sufficient legal basis is reasonableness under the circumstances. *Estate of Boland*, ¶ 50 (citing *D'Agostino v. Swanson*, 240 Mont. 435, 445, 784 P.2d 919, 925 (1990)).

¶23 The District Court determined that "child trafficking" is defined under the Montana criminal code and does not have a different, distinct meaning in divorce cases under Montana law. The District Court noted that Schaplow was unable to cite any precedent, and the District Court was unable to find any rulings by this Court or other district courts, utilizing the term in such a manner. The District Court determined that the dictionary definitions Schaplow provided were inconsistent with the definition he created. Our own review of the record leads us to conclude that the District Court did not err in this determination. Schaplow has not cited any legal authority indicating that child trafficking means "treating children as a disposable commodity." The unproven allegations concerning Family Bridges and the Standing Master in the articles and affidavits to which Schaplow directs this Court fail to provide legal grounds supporting his claim. First of all, the Standing Master made no referral to Family Bridges in this case. It was in response to the Standing Master's decision to give Karli more parenting time that Schaplow made these

10

inflammatory allegations and characterized a custody decision as "child trafficking." As appropriately noted by the District Court, Schaplow's April 24, 2023 reply brief made no attempt to distinguish criminal child trafficking—as defined by the Montana Code Annotated—from the definition he created himself. Schaplow attempted to justify his use of the term by stating, "I knew what I meant when I said it." Schaplow's personal belief as to what he may have meant by use of the term fails to satisfy Rule 11(b)(2)'s objective reasonableness standard. The District Court did not err by holding that Schaplow's claim against the Standing Master in the April 24, 2023 reply brief was made without legal support.

¶24 Schaplow argues the District Court erred by finding his statements regarding Pabst were made without evidentiary support and for an improper purpose. The standard for determining whether a written statement has sufficient factual basis or whether a party acted with an improper purpose is reasonableness under the circumstances. *Estate of Boland*, ¶¶ 50–51 (citing *D'Agostino,* 240 Mont. at 445, 784 P.2d at 925). This Court gives district courts wide latitude to determine whether the factual circumstances amount to abusive litigation tactics, because the district court "has tasted the flavor of the litigation and is in the best position to make these kinds of determinations." *D'Agostino*, 240 Mont. at 446, 784 P.2d at 926 (citation omitted).

¶25 The District Court found Schaplow made the accusation against Pabst "for no purpose other than to harass opposing counsel" and without any factual basis. Schaplow directs this Court to responses Pabst filed, which opposed his motions to disqualify the

11

Standing Master, as evidence that Pabst had "impermissibly advocated" for the Standing Master. Beyond these conclusory statements, Schaplow provides no substantive legal analysis for his nonsensical contention that an attorney who opposes a motion to disqualify a standing master effectively becomes the standing master's attorney. The District Court did not err by holding that Schaplow's statements about Pabst in the April 24, 2023 reply brief were made without evidentiary support and for the improper purpose of harassment.

¶26 Schaplow argues the District Court violated the plain language of Rule 11 by referencing testimony from the June 21, 2023 hearing in its Rule 11 Order and by stating in its Rule 60(b)(6) order that "representations in pleadings or oral arguments" are subject to Rule 11. The District Court did not base its Rule 11 Order on statements made at the June 21, 2023 hearing; it merely discussed the hearing testimony to support its findings that the written allegations lacked a factual and legal basis. Regarding the court's reference to oral argument, the federal cases Schaplow cites are distinguishable.[6] The sanctions order in *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) was reversed because it was unclear whether the lower court's ruling was based on oral or written statements. In *Bus. Guides Inc. v. Chromatic Commc'ns Enter. Inc.*, 892 F.2d 802, 813 (9th Cir. 1989), the sanctions for written statements were affirmed. The District Court's Rule 11 Order leaves no doubt that its bases for imposing sanctions were the written statements in Schaplow's April 24, 2023 reply brief, which accused the Standing Master of being

---

[6] Federal jurisprudence is persuasive authority when interpreting our Rule 11 because it is similar to Fed. R. Civ. P. 11. *See Byrum*, ¶ 70.

"engaged in the trafficking of little children" and accused Pabst of being the Standing Master's attorney.

¶27 Even if the District Court's Rule 11 Order was somehow based on oral reiterations of the same allegations contained in his reply brief, Schaplow's argument would remain unavailing. Although "matters arising for the *first time* during oral presentations to the court" may not be subject to Rule 11, an oral statement may form the basis for Rule 11 sanctions if it advocates a contention previously contained within a written submission. *In re Bees*, 562 F.3d 284, 289 (4th Cir. 2009) (emphasis added); *see also* Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments, Subdivisions (b) and (c)). The hearing was held solely for the purpose of determining whether a factual and legal basis existed for the written contentions submitted in Schaplow's April 24, 2023 reply brief. The District Court did not err by referencing testimony in its Rule 11 Order or by stating Schaplow's statements at oral argument were subject to Rule 11 under these circumstances.

¶28 Schaplow argues the District Court could not award Karli her attorney fees because she filed a motion to disqualify rather than a Rule 11 motion. We are not persuaded by the federal cases cited by Schaplow. In *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87 (2nd Cir. 1999) and *Norsyn, Inc. v. Desai*, 351 F.3d 825 (8th Cir. 2003), the parties were awarded attorney fees without filing a motion raising the issue of sanctions or any document describing the sanctionable conduct, and thus, the courts of appeals concluded the respective parties were not entitled to attorney fees. *Nuwesra*, 174 F.3d at 94–95; *Norsyn*, 351 F.3d at 832. The Fifth Circuit Court of Appeals reversed an attorney

13

fee award in *Brunig v. Clark*, 560 F.3d 292 (5th Cir. 2009) because the parties conceded the sanction was imposed on the court's own initiative. *Brunig*, 560 F.3d at 298. In this case, Karli's motion to disqualify set forth a litany of reasons sanctions would be justified and specifically referenced the statements Schaplow made in the April 24, 2023 reply brief. The District Court found the motion to disqualify "appropriately brought the Rule 11 matters to the Court's attention." Karli also moved for attorney fees related to the motion to disqualify in her July 5, 2023 reply brief. The circumstances of this case are demonstrably different from those in *Nuwesra*, *Norsyn*, and *Brunig*.

¶29 In any event, the District Court properly followed the due process requirements set forth in Rule 11. Before Rule 11 sanctions are imposed, a district court must hold a hearing on whether sanctions are proper and give notice to the party it proposes to sanction, so that the party "will be provided with due process before it is punished." *Byrum*, ¶ 32 (citations omitted). The District Court held a hearing at which Schaplow had the opportunity to present testimony and evidence concerning his assertions regarding Pabst and the Standing Master. The District Court gave notice to Schaplow in its Rule 11 Notice that it was considering Rule 11 sanctions and provided Schaplow with 21 days to respond. The District Court complied with all of the requirements in *Byrum* and its predecessors. *See Byrum*, ¶ 34. The provision regarding contempt in the Rule 11 Order also does not violate Schaplow's due process rights or constitute an impermissible advisory opinion. A district court has the power to compel obedience to its orders, § 3-1-111(4), MCA, and to punish

14

disobedience of an order in a cause before it as contempt of court, § 3-1-501(1)(e), MCA. *See Grenfell v. Grenfell*, 200 Mont. 490, 493, 652 P.2d 1170, 1171 (1982).

¶30 "The purpose of Rule 11 is to discourage dilatory or abusive tactics and to streamline the litigation process by lessening frivolous claims or defenses." *Estate of Boland*, ¶ 54. If a document is signed and submitted in violation of Rule 11, the district court "*shall impose . . .* an appropriate sanction." *Morin v. State Farm Mut. Auto. Ins. Co.*, 2013 MT 146, ¶ 38, 370 Mont. 305, 302 P.3d 96 (emphasis added). A district court retains the necessary flexibility to deal appropriately with Rule 11 violations and has discretion to tailor sanctions to the particular facts of the case. *Davenport v. Odlin*, 2014 MT 109, ¶ 9, 374 Mont. 503, 327 P.3d 478. As in *Estate of Boland*, the District Court in this case evaluated the reasonableness of Karli's attorney fees under the seven factors set forth by this Court in *Plath v. Schonrock*, 2003 MT 21, ¶ 36, 314 Mont. 101, 64 P.3d 984. *Estate of Boland*, ¶ 54. The District Court's analysis of attorney fees in its September 5, 2024 order is sufficient to support the award in this case. The District Court did not abuse its discretion by imposing $6,630.23 in attorney fees plus post-judgment interest as a sanction against Schaplow.

¶31 Karli moved to dismiss this appeal as frivolous and requested attorney fees on appeal. "In determining whether an appeal is frivolous and unreasonable, we generally assess whether the arguments were made in good faith." *Estate of Boland*, ¶ 61. Although we have determined that Schaplow's claims lack merit, we do not conclude his arguments on appeal were entirely frivolous or lacking in good faith. Accordingly, we deny Karli's

motion to dismiss and decline to award her attorney fees and costs on appeal. It is therefore ORDERED that Karli's motion to dismiss and for attorney fees and costs on appeal are DENIED.

¶32 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's interpretation and application of the law were correct, its findings of fact were not clearly erroneous, and it did not abuse its discretion by awarding attorney fees as a sanction against Schaplow. The District Court's judgment is affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE